THE PEOPLE, on the relation of DIKEMAN and MARTIN, *vs.*
THE PRESIDENT AND TRUSTEES of the village of Brooklyn.

The trustees of Brooklyn have a discretion, and may refuse to go on with proceedings commenced relative to the opening of streets in that village, until the proceedings have progressed so far as to give mutual rights to the parties. After rights have become vested by virtue of such proceedings, they cannot refuse with impunity to proceed, though it does not follow that a *mandamus* is the proper remedy, for such refusal. To entitle a party to a mandamus, a complete, not an inchoate right, must be shewn ; and this writ will not be allowed, unless there is no other specific remedy. Where the trustees of Brooklyn refused to file a report of commissioners of estimate and assessment, and obtain a confirmation of the same, and have the damages which had been awarded assessed, this court refused to issue a mandamus, but left the parties to their remedy by action.

· MOTION for a mandamus. At the last term, an alternative mandamus was ordered in this case, on the application of the relators, stating that on the 3d day of March last, a petition was presented to the board of trustees of the village of Brooklyn, praying the opening of a street in that village, called Adams street, from its then southerly termination to Fulton street ; that in conformity to the provisions of the act relative to the village of Brooklyn, passed April 3d, 1827, (*Statutes, vol.* 8, *a.* 127,) commissioners of estimate and assessment were appointed on the 7th day of May, who, on the 9th day of June, made a report, that they had estimated and assessed the damages and recompense due and to be

made to the several persons whose lands were intended to be taken and appropriated in the opening of the said street, and that amongst others, they had assessed the damages of J. Dikeman, one of the relators, at $6556,20, and of N. L. Martin, the other relator, at $6714,66. That the trustees of the village refuse to file the report in conformity to the directions of the statute; that in consequence of the commencement of the proceedings, and in anticipation of the street being opened, Martin, one of the relators, has taken down part of a rope walk, which would have been in the way of the contemplated improvement, and has commenced a new building in the line of the anticipated street, which if not opened will occasion him a loss of $4000; and Dikeman, the other relator, has not *let*, as he otherwise would have done, a rope walk, and other buildings connected with it, as the improvement would require their removal; and has incurred great expense in preparing to erect buildings in conformity to the proposed improvement. And that one R. D. Covert purchased a lot in contemplation of the opening of the street, and if the street is not opened, the lot, and the improvements made by him, will be of several hundred dollars less value than they otherwise would be. The alternative mandamus directed the trustees of the village to cause the report of the commissioners to be filed with the clerk of the common pleas of Kings, to the end that the same might be confirmed by the court, and *to cause an assessment to be* made for the payment of the damages, or to shew cause why a peremptory mandamus should not issue.

At this term, the trustees of the village make their return to the alternative mandamus, setting forth, that immediately on the report of the commissioners coming in, to wit, on the 9th June last, a remonstrance was presented to the board, by the owners and lessees of property on Adams-street, and who deemed they would be assessed for the contemplated improvement, representing that the damages assessed by the commissioners were unreasonable and excessive, and should they be levied, in many cases would be ruinous to the owners of property to be affected by such assessment; that the re-

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

monstrance was referred to a committee of the board, who reported that they deemed the assessment unreasonable and excessive ; that the board procured an assessment to be made by five indifferent men, who estimated the damage of Mr. Dikeman at only $2025, and the damage of Mr. Martin at only $1567,50 ; [the certificate of those persons, together with a number of affidavits corroborating the same, are annexed to·their return ;] and that the board, (believing the assessment to be excessive, and that no rights have been conferred on, or vested in the relators, by the preliminary proceedings in relation to the opening of the street in question,) claim the right of controlling the proceedings, and therefore have declined, and do decline, except under the peremptory order of this court, to file the report, or to take any further measures in relation to the proposed improvement. On the part of the relators, a volume of affidavits was submitted, supporting the assessments made by the commissioners of estimate and assessment, which affidavits were submitted, subject to the exception of the counsel of the trustees, as to their admissibility.

*J. Greenwood,* for relators.

*S. A. Foot,* for the trustees.

*By the Court,* SAVAGE, Ch. J. The first question to be determined is, upon what papers are we to act? We have before us the affidavits upon which the alternative mandamus was granted, the return of the trustees, and a great number of affidavits, which are intended as a replication to the return of the trustees. These latter affidavits are altogether inadmissible. The relators stated their case in the first instance : upon that, we called upon the trustees to shew cause why they had not proceeded. They have shewn cause by their return ; and upon the original papers, and the return, we are to act. Should we receive the additional affidavits of the relators, they may contain new matter, and then the trustees should be permitted to answer ; and thus the proceedings might be continued to an unreasonable, and almost in-

terminable extent. I will here remark, that the admission or rejection of affidavits to oppose or support the report of commissioners of estimate and assessment, in the city of New-York, has no analogy to this proceeding. Here we are acting as a court of common law, revising the proceedings of an inferior tribunal, to see whether they have done their duty. In the other case we are mere appellate commissioners, and enquiring whether the commissioners below have acted discreetly.

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

By the 18th section of the act to reduce the law incorporating the village of Brooklyn, &c. into one act, passed April 3, 1827, the trustees, on receiving the petition therein mentioned, are authorized, but not compelled, to lay out and make such new streets as they shall think necessary. In this respect, their powers are analogous to those possessed by the corporation of the city of New-York; and the decisions in relation to the one are applicable to the other. Under these powers, the trustees resolved, (the preliminary proceedings having been had which are mentioned in the act,) to proceed and open a street, called Adams-street, from its then southerly termination to Fulton-street. The commissioners were regularly appointed to appraise the property to be taken for the street. These commissioners made their report in due form. The act requires the trustees to cause such report to be filed with the clerk of the court of common pleas, at the next term thereof; and that court are either to confirm the report, or refer it back to the same, or to new commissioners. The trustees, after receiving the report, refuse to file the same, and the question is, whether the power of this court shall be exerted to compel them to file it? The reason assigned by the trustees is, that the assessment of the property of the relators is extravagantly high, and that those who will necessarily be assessed to pay the assessment, have remonstrated against any further proceedings.

Assuming the fact to be as stated by the trustees, have they a right to discontinue these proceedings? and whether they have or not, is this a case in which a mandamus ought to be granted?

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

1. Have the trustees a right to discontinue? In the case of Dover-street, (18 *Johns. R.* 506,) commissioners had been appointed and reported. Their report was set aside, and other commissioners appointed, who refused to act. A motion was made for leave to discontinue. The motion was opposed, on the ground that those whose property was to be taken, had acquired vested rights to the compensation; but this court said, that they considered the application as if made before the appointment of commissioners, and granted the motion, saying, that no rights vested before commissioners were appointed or report made.

In the matter of Beekman-street, (20 *Johns. R.* 269,) a similar application was made, after the second set of commissioners had been appointed, but previous to their report. The motion was denied, on the ground that the court had not the power to grant it. The chief justice, in giving the opinion of the court, says, that if the court had the power, they would not exercise it in that case, and principally on the ground, that upon the faith of the proceedings of the corporation, several persons had made purchases of lots which would be depreciated in value by such discontinuance; that the corporation, having determined to make the improvement, and having procured the appointment of commissioners who had entered upon their duties, it was not competent for the corporation to resume the subject, and vacate their acts. Pending the application to this court, and previous to the appointment of the second set of commissioners, the corporation applied to the court of chancery for an injunction to restrain certain persons from erecting buildings on Beekman-street, on the ground that such erections would enhance the damages to be paid by the contemplated improvement, which was denied by the chancellor, who said that no rights had vested; and he suggested, that the corporation were not bound to go on, but might recede and abandon their plan at any time before the commissioners of assessment should have reported, and their report should have been confirmed; that on the confirmation of the report, rights then become acquired and vested in the parties respectively; the corporation

become seized, and may take possession of the land, and the individual owners become entitled to the damages assessed. (6 *Johns. Ch. R.* 49, 50.) Both the chancellor and this court conceded, that there was a time when it was discretionary with the corporation to discontinue further proceedings. This court seemed to supoose, that after the commissioners had entered upon their duties, the corporation must go on. The chancellor supposed that the corporation might recede at any time before the confirmation of the report of the commissioners, but not after, because then mutual rights became vested. The expression of this opinion was not called for by the decision in either case, and is, therefore, not authority, strictly speaking. The reason assigned by the chancellor seems to me to be the criterion by which to test this question. When do the rights of the parties become vested? Can the corporation take possession of the land to be taken for the street, before confirmation of the report? And can the person in whose favor damages are assessed, prosecute for the amount of the assessment upon the mere making of the report?

The case of *Stafford v. Mayor, &c. of Albany,* (6 *Johns. R.* 1, and 7 *Johns. R.* 541,) was an action for the amount of an assessment. In that case, damages were assessed by a jury, and judgment of the mayor's court was rendered thereon, according to the statute under which the proceedings were had. The mayor's court afterwards set asid the assessment, which this court held irrregular and unwarranted. They say, when the assessment was confirmed, the court had no further powers; they were *functus officio.* The same doctrine was recognized in the case of Third-street in the city of New-York, (6 *Cowen,* 571,) where it was held that a report, being confirmed, becomes irrevocable, unless it be waived by all parties concerned. So, also, in *Hawkins v. The Trustees of Rochester,* (1 *Wendell,* 54,) we held that the plaintiff, by the verdict of the jury and the judgment of the president of the village thereon, acquired a vested right to the sum awarded to him as damages, which it was not in the power of the trustees to defeat, by discontinuing the proceed-

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

ALBANY,
Oct. 1828.

The People
v.
Corporation of
Brooklyn.

ings in relation to the street. By the act in question, the confirmation of the report, and the payment or tender of the sums awarded, shall not be conclusive, and authorize the trustees to enter upon the lands; and, according to the cases just referred to, after the confirmation of the report, should the trustees refuse to proceed, they would be liable to pay the sums assessed to the relators. It appears, then, that after the confirmation of the report, rights become vested in individuals, and the trustees have no discretion as to discontinuing the proceedings. But have they not that discretion, so long as they do not, by the exercise of it, affect the vested rights of others? It seems to me, such must be the conclusion from the cases cited; and there appears to be a fitness and propriety in allowing such discretion to the trustees, because, after presentment of the report of the commissioners for confirmation, the trustees cannot object to the report, or shew that the assessment is too high, the right of appeal being given by the act, only to the party in whose favor the report is made, in case he shall conceive himself aggrieved in the premises. It is true, indeed, that in the case of *Beekman-street*, (20 *Johnson*,) the court said, that if they had the power to grant a discontinuance, they would not do it; not because others had vested rights, but because purchases had been made on the plighted faith of the corporation; and if the improvement failed, there would be great individual pecuniary sacrifices. They did not say, that in that case they would compel the corporation by mandamus to proceed, though such would seem to be the inference.

A mandamus issues, in general, in all cases where the injured party has a right to have any thing done, and has no other specific means of compelling its performance. There must be a right, therefore, without any other adequate remedy, or a mandamus does not issue; and I incline to the opinion that the right must be complete, not inchoate. The cases cited, in which this court has compelled supervisors to raise money assessed to individuals for damages on opening roads, (19 *Johns. R.* 272, 5 *Cowen*, 292,) are cases where the right of the relators was complete, by the assessment of the jury and justices, and the supervisors had no discretion

about it. Such discretion was subsequently given to the supervisors. (*Statutes, vol.* 7, *b.* 229. *Revi. Stat. ch.* 16, *tit.* 1, *art.* 4, § 69.)

My conclusion is, that until the proceedings have progressed so far as to give mutual rights to the parties, the trustees have a discretion, and may refuse to proceed ; but after rights become vested, by virtue of these proceedings, they cannot refuse, with impunity, to proceed. But does it follow that a mandamus is the proper remedy ? If the relators have a right to the amount assessed in their favor, by virtue of the assessment alone, then an action lies as is decided in the cases cited from 6 *Johns.* and 1 *Wend.* ; and even if the right is not so complete as to sustain an action for the money, yet, if the defendants have been guilty of a violation of duty, to the prejudice of the relators, it does not follow that a mandamus is the proper remedy. In the matter of *Shipley*, (10 *Johns. R.* 484,) a mandamus was asked for, to compel a bank to permit a transfer of certain shares in the stock of the bank ; but the court said, "The applicants have an adequate remedy, by a special action on the case, to recover the value of the stock, if the bank have unduly refused to transfer it." In *The King* v. *Bishop of Chester*, (1 *T. R.* 396, 404,) the king's bench refused a mandamus, because the party had a specific remedy by *quare impedit;* and *Buller*, justice, says, "This court will not interpose by mandamus, unless the party making the application has no other specific legal remedy."

I am of opinion, therefore, that a mandamus ought not to be granted. If the relators have acquired a right to the money specifically assessed in their favor, then an action of assumpsit lies. If they have acquired any rights by the report of the commissioners, and have sustained damages by reason of the refusal of the trustees to perform their duty, then an action on the case lies to recover those damages ; and, in either case, there is no necessity for an exercise of the extraordinary power of this court by mandamus.

Motion for peremptory mandamus denied.