Butler, J.
dissenting. I feel bound, in this case, to record my dissent from the judgment of a majority of my brethren, upon both of the questions involved in the grounds of appeal.
1st. I think Samuel Mayrant was entitled to be invested with the authority of executor, under the will of Mrs. Caroline Mayrant. His agency is indispensably necessary to carry that will into effect. Although he is not, in express terms, appointed executor, yet he is required to exercise powers that will, in their direct consequences, execute the will of the testatrix.
“An executor is the person to whom the execution of a last will and testament of personal property is, by the testator’s appointment confided.” 2 Black. Com. 503. Although no executor be expressly nominated in the wall, by the word executor, yet, if by any word, or circumlocution, the testator recommend, or commit to one or more, the charge and office, or the rights which pertain to an executor, it amounts to as much as the ordaining and constituting him or them to be executors, 1 Wms. on Ex’ors. 123, *107 The purport of Mrs. Caroline Mayrant’s will, when analyzed according to its just construction,, is as follows: With maternal solicitude, in the first place, she provides guardians for her children. The care and direction of her older son, she particularly commits to her brother-in-law, Samuel Mayrant, whilst it is her desire, that her sister should have the guidance and care of her daughters, both, however, to co-operate in a general superintendance. With regard to the youngest child, she leaves his education to be directed by his uncle and aunt, according to the subsequent developments of his character. This purpose being expressed, the testatrix, in the last part of her will, provides, in effect, for the disposition of her estate, with a view, both of gratifying her own wishes, and of effecting the probable designs of her husband in relation to their children. She gives to her sons, money enough to acquire an education and profession or calling, with a decent outfit. After these expenditures, it is provided that the remainder of her estate should be divided between her daughters. And how is this disposition of her estate to be carried into effect'? Why, as she expresses it in the last line of her will, “according to the judgment of her brother-in-law, Samuel Mayrant.” From this, it would seem evident, that the money for the education of the children, must go through the hands, and be expended, by the direction of Samuel Mayrant, and it is equally clear, that the remainder cannot be divided in any other way than as Samuel Mayrant may direct. His will and judgment constitute the law, under the will, for the disposition and distribution of the estate. With these explanatory, but full powers, necessarily implied, can it be supposed that the testatrix had in contemplation any other agency, such as would be required in the functions of a distinct administrator, to carry into effect the provisions of her will % What discretion or power would such an agent have1? No more than those of an automaton, moving under the volition and judgment of Samuel Mayrant. The estate is to be expended and divided by him, and only by him; what necessity then, can there be, for calling in the inoperative interference of another 1 I can neither perceive or imagine a reason for it. I think this view is illustrated by the cases quoted in WTil *108 liaras on Executors; as where the testator says, I commit all my goods to the administration of A. B.; or to the disposition of A. B. In such cases, A. B. would be appointed executor. 1 Wms. Ex'rs. 123.
The second question is still free'rfrom difficulty. There was no necessity, or legal propriety, in resorting to the writ of mandamus, to compel the Ordinary to do his duty, in reference to the rights of Mrs. Simmons. She had a statutory remedy fully provided by the Act of 1839. The writ of mandamus is a high prerogative writ, issuing in this State, from a Superior Court of Law, directed to officers of an inferior jurisdiction, requiring them to do some particular act, therein specified, which pertains to their office and duty. In general, it is to require such officers to do some ministerial act, which they have omitted, and which, by law, they are required to perform. It ought to be used on all occasions where the law has established no specific remedy, and where, injustice and good government, there ought to be one. 4 Bac. Ab, (Mandamus.) But it appears from the same book that where the party applying for such a writ, has a specific and subsisting legal remedy, for a legal right, it will be denied. The remedy in the case of the present relatrix, is provided in the following clause of the Act of 1839, page 42, sec. 13. “If any person or persons shall think themselves aggrieved, by any judgment, sentence, decree, determination, denial or order, of any of the Courts of Ordinary aforesaid, it shall and may be lawful for such person to appeal therefrom to the Court of Common Pleas or Equity, by filing within twenty days thereafter, his or her grounds of appeal therefrom, and serving the opposite party or attorney, with a copy thereof.”
If Mrs. Simmons was entitled to the administration, and the Ordinary had refused to grant her letters, or if he had granted them with an order that her securities should reside in Greenville, what was then to prevent her from taking an appeal from either, as an entire denial of her rights, or an order made in derogation of them. I can perceive no reason whatever; on the contrary, her mode of redress is specifically provided by the ample provisions of the above clause. She had a right to appeal to the Court of Common Pleas, to have such denial or order reversed, with in *109 structions to the Ordinary, as to his duties. On the Ordinary’s refusing to comply and carry into effect such instructions of the Court, growing out of the appeal, a mandamus might issue, or some other process to compel the subordinate tribunal to do its duty. It is said, however, that an appeal is only contemplated, and provided for, in cases where there is another party on whom notice of appeal may be served. According to this view, there can be no appeal from the Ordinary, in ex-parte cases. The very word “denial,” seems to imply that there may be an ex-parte application to the Ordinary, and that upon his refusal or denial of which, an appeal will lie. It was necessary and proper that the Act should have provided for all cases, and hence, the provision that where there is an opposite party, notice should be served on him. But where there is no party occupying an adversary position, of course there will be no necessity to serve notice. It does not follow that such party, who may have met with a gross denial of his rights, shall be deprived of all right of appeal, because he can find no party to serve a notice on. When there is no opposite party concerned, the party complaining shall file his ground of appeal with the Ordinary, and thereupon, that officer would be required, as provided by the Act, “on filing such notice,” to make out for the party so appealing, a “copy of such judgment, sentence, decree, determination, order, or denial,” and of the evidence taken by him on such proceeding.
I have always understood that it w7as an axiom, that the major included the minor, and, therefore, where a party is allowed an appeal, wffien he is required to serve notice on others w7ho are concerned, I do not see why he may not appeal when no body is concerned but himself. He only has less to do in one instance, than in the other. But it is unnecessary to attempt, by illustration, to make the palpable meaning of the Act, clearer than its own lauguage speaks. Its provisions are made even plenary by cumulative expletives.
Richardson, J. concurred.
Note. . When mandamus lies generally — see The People vs. Corporation of Brooklyn, 1 Wendell, 318; Commonwealth vs. Risseter, 2 Bin *110 ney, 362; Griffith vs. Cochrane, 5 lb. 87; Commonwealth vs. Judges of Common Pleas, 3 lb. 275.
It seems that mandamus will lie to prove a will, and if there be none, to grant administration. Gray vs. Finch, Comb. 454; Dunkin vs. Mun. T. Raym. 235.
To Inferior Courts, 10 Wend. 285 ; 2 Cowen, 479. Amherst’s case, T. Raym. 214; Burgh vs. Blunt, Mod. Rep. 350.
See further, many cases collected, Am. Com. Law. (Mandamus.)