THE MATTER OF THE APPLICATION OF THE WATER COMMISSIONERS OF JERSEY CITY, TO CONDEMN LANDS OF C. D. & J. D. & CHRISTIAN VAN WAGENEN.

1. When public officers acting under statutory authority have proceeded to condemn lands for the public uses, and an appraisement of damages has been made, but not yet confirmed by the court according to the statute, such proceedings can be discontinued against the assent of the landholders.

* *Rev., p.* 972, § 5.

In matter of Water Commissioners of Jersey City.

2. But when the report of the appraisers has been confirmed by the court, the rights of both parties become definitely established, and the public officers cannot withdraw the application and abandon their proceedings.

By an act of the legislature, approved 25th March, 1852,* in case of disagreement between the Water Commissioners of Jersey City and the owner of lands required for the purposes of the act, the Circuit Court of the county of Hudson, on the application of either party, is directed to nominate and appoint three disinterested persons to estimate the value of such lands and the damages. The act further provides that when the report of the appraisers shall have been confirmed by the said court, the commissioners shall, in the language of the act, " pay to the said owner, or to such person or persons as the court may direct, the sum mentioned in said report, in full compensation for the property so required, or for the damage sustained, as the case may be; and thereupon the mayor and common council of Jersey City, shall become seized in fee of such property, &c." It appears in this case, that the commissioners were unable to agree with the above named land owners, and that, on the application of the commissioners, appraisers were appointed by the Circuit Court of the county of Hudson, who made and reported to the said court their estimate of the value of the land and damages. Upon the filing of this report on behalf of the land owners, a confirmation was moved for, but, on motion on the part of the commissioners, a rule was granted to show cause why the report should not be set aside, and the usual leave was granted to take affidavits. Pending these proceedings the counsel of the water commissioners moved to discontinue the proceedings to condemn the said lands, and this being resisted by the land owners, the Circuit Court directed the application to discontinue to be certified as a case of doubt to this court.

For the water commissioners, *R. D. McClelland* and *R. Gilchrist.*

For land owners, *I. W. Scudder.*

* *P. L., p.* 421.

THE CHIEF JUSTICE.   This court is asked for its advisory opinion on the question whether, when public officers have proceeded under statutory authority to condemn lands for public uses, and an appraisement of the value of the lands and damages has been made, such proceedings can be discontinued against the assent of the land owners?

It has been repeatedly held in the English courts that the mere giving of the notice to treat for the purchase of lands authorized to be taken under the railway act, constitutes a contract on the part of the company from which they cannot withdraw. In the case of *The Queen* v. *Birmingham and Oxford Junction Railway*, 6 *Railw. C.* 628, the court say—"The notice to treat is an inchoate purchase, and after that has been given in due time, it is competent for the land owner to compel the completion of the purchase." This judgment was affirmed in the Exchequer Chamber, 4 *Eng. L. & E.* 276.   And in *Walker* v. *Eastern Counties Railway Company*, 6 *Hare* 594, on a bill for specific performance, the complainant having received a notice from the company that they intended, in the exercise of the powers given them by the railway act, to purchase his lands, the Vice Chancellor maintained that the notice had the effect of making a contract between the parties which was entitled to the protection of a court of equity, and accordingly ordered the company to take the proceedings prescribed by the statute for ascertaining the amount of purchase money and compensation.

But the foregoing decisions cited from the English books are not, in all respects, applicable to the case before this court.   They establish the rule of the English law with regard to proceedings to acquire title to lands by private corporations.   It is not necessary at the present time, for this court to express any opinion whether a notice by a railroad company or other private corporation to the land owner, of an intention to take the lands by force of their statutory powers, creates a contract and places the parties in the relation of vendor and purchaser.

The actors in the proceedings to acquire the lands now in

question are not incorporated for private purposes, but on the contrary are public officers, acting in behalf of a city. It is obvious that a company who have a franchise given them for the profit of the individual members composing it, stand on a very different footing from that of commissioners who represent a whole community and who have no private interest in their office. In *Reford* v. *Commissioners of Woods, Forests, &c.*, 15 *Adolph. & El. N. S.* 773, this distinction was recognized. In this case the commissioners had given notice that they intended to take certain lands for the purpose of forming the park authorized by the act, but afterwards refused to proceed to have the compensation for lands assessed; and upon an application for a *mandamus*, the court refused the writ and held that, as the commissioners under the statute were acting in a public capacity, the notice given by them did not constitute a contract. The doctrine of the former decisions, that as between a private company and a land owner, a notice to treat created a contract enforceable against such company was not impugned, but it was considered that, on grounds of public policy, the rule should not be extended to the acts of agents of the government acting in behalf of society. This distinction seems eminently proper. It may well be held, that a private company who are actuated solely by the motive of the interest of their stockholders, should not be permitted to retract after having declared, in the statutory form, their intention to take the lands of a citizen, on the ground that such declaration is an offer on their part to pay the price which shall be afterwards ascertained in the mode provided by law. As the land owner has no option his assent is implied and thus a contract is formed. Under such circumstances it can be urged with emphasis that a withdrawal of the offer is not to be tolerated, as the parties deal as individuals with a single eye to their own advantage. Such considerations cannot, with the same force, avail where the proceedings to acquire lands are taken in behalf of the public, for in such case the agent is commissioned to acquire the title for the public good; and if it therefore should turn

out, before the transaction is closed, that the interest of the public will not be promoted, but on the contrary will be impaired by concluding the purchase, it would seem to follow that he ought not to be compelled to proceed. Empowered to make the purchase for the public good, he ought not to be forced to conclude it to the public detriment. I do not think the cases cited, which all arise out of the transactions of private companies, ought to be applied, without a guarded discrimination, to the operations of public agents.

The question then arises, if the notice does not form the contract, what act is necessary to the consummation of the proceedings so as to render it obligatory. In my opinion that act is the confirmation of the report by the court. It is, then, by the express terms of the act, that the land owner has the right to the money to be paid in a definite time, and on the payment of the money title passes to the city. It is this confirmation which appears definitively to establish the rights of both parties; and until this event, the public officers can withdraw their application and abandon the proceedings.

The courts of New York have expressed a similar view on the question. Thus, on an application to the Supreme Court of that state for a *mandamus* to compel the trustees of Brooklyn to file a report of commissioners of estimate and assessment of damages, made in the proceedings commenced by them in the opening of a street, the motion was denied, on the ground that the rights of the respective parties had not become fixed. A confirmation by the court of the estimate and assessment was requisite under the act regulating the procedure, and the refusal of the *mandamus* was justified from this consideration. 1 *Wend.* 318. In construing a statute containing a provision almost identical with the one now before the court, Chancellor Kent thus expresses himself,— " Perhaps the better opinion is that the corporation are not bound to go on, but may recede and abandon their plan at any time before the commissioners of assessment shall have reported, and their report shall have been confirmed in pursuance of the 178th section of the act referred to in the bill.

On the confirmation of the report of the commissioners, rights then became acquired and vested in the parties respectively." *The Corporation of New York* v. *Mapes*, 6 *Johns. Ch. R.* 48. A number of other cases to the same purpose will be found collected in *The matter of Anthony street*, 20 *Wend.* 620.

On these grounds, therefore, this court is of opinion that the commissioners in the present case should be permitted by the Circuit Court to discontinue their proceedings in question—but that such discontinuance should be upon such terms as to the payment of the costs and expenses of the land owners as the said Circuit Court may deem just.

CITED in *Loweree* v. *City of Newark*, 9 *Vroom* 156.

APPROVED *in Mabon* v. *Halstead, Director*, 10 *Vroom* 643; *O'Neil* v. *Freeholders of Hudson*, 12 *Vroom* 172.