Huebner v. Roosevelt.

---

CHARLES HUEBNER *against* CLINTON ROOSEVELT.

(Decided February 7th, 1876.)

Where the defendant had been for many years the landlord of the plaintiff, but without collecting or demanding the rent, and the plaintiff afterward became landlord and the defendant hired from him a part of the premises for a year at an entire rent: *Held*, that these circumstances did not constitute a case of a mutual open and current account, so as to prevent the running of the statute of limitations against so much of the defendant's claim as accrued six years prior to his interposition of his counter-claim in the action for rent due to him.

APPEAL by plaintiff from a judgment of this court entered on the report of WILLIAM G. WHEELWRIGHT, as referee.

The facts are fully stated in the opinion.

*Max C. Huebner*, for appellant.

*C. Roosevelt*, respondent, in person.

ROBINSON, J.—The cause of action stated in the complaint was for one year's rent of the easterly half of the fourth floor of No. 23 Chambers street, for the year beginning May 1st, 1866, to May 1st, 1867, at an agreed rent of $300. Defendant's occupancy of the premises for that period is conceded by the answer, but he denies that he occupied as the tenant of the plaintiff, or agreed to pay him rent therefor. The answer sets up a counterclaim for use and occupation by plaintiff as tenant of the defendant from August, 1857, to May 1st, 1866, of the fifth story of the same building, for which defendant alleges in his amended answer, plaintiff agreed to pay a reasonable rent, and that such use and occupation was reasonably worth one hundred and fifty dollars per annum. This answer was verified on the 6th day of May, 1871. Plaintiff replied denying each and every allegation of the counterclaim, and interposed as a defense the six years statute of limitations to such portion of the claim as accrued prior to March 10th, 1865 (six years prior to the date of the summons).

Plaintiff's claim to the rent of the premises occupied by the defendant was sustained by his own testimony and that of his son. At the end of that term, defendant, on being applied to for payment of the year's rent, refused it, alleging as an excuse (and not contradicted) that plaintiff had occupied rooms under him, up stairs (the 5th story), a great many years, for nothing. This had reference to the counterclaim set up in the action. He gave no evidence as to any agreement for the terms of this occupancy, except as he says, " I agreed to allow from what he (plaintiff) owed me, what they cost to the landlord, on a fair average." He further testifies that such fair average was but $115 per annum, the rent paid by plaintiff to his landlord for the three upper floors being $700 per annum. On the issues formed by the pleadings and proofs offered, the referee sus-

tains plaintiff's claim as alleged in the complaint, and finds there was due him the $300 rent and interest which he claimed. As to the counterclaim, he finds plaintiff was indebted to defendant for the use and occupation of the fifth floor, for a term of years, in the sum of one thousand dollars, and awards him that amount as due him, with interest from the commencement of the action, and that the balance between the sums respectively allowed plaintiff and defendant, is due the defendant, and awards judgment therefor in his favor. He also finds that the statute of limitations did not apply against the counterclaim, and, in the words of his report, that "there being mutual demands between the parties plaintiff and defendant, within six years of the last item of the demand in favor of the defendant. and against the plaintiff accrued due." It fully appears that the plaintiff occupied the 5th story of the building, holding under the defendant from some time in August, 1857, to January 8th, 1866, when a fire occurred, and they "became uninhabitable," and within the provision of the act of 1860, ch. 345, the lease was terminated. As to the terms upon which defendant so rented or allowed the plaintiff to occupy the fifth floor of the building, there is great discrepancy in the testimony. Defendant, appearing as attorney in person, in his verified answer, first swore that plaintiff agreed if he (defendant) would allow him and his family such occupancy of those premises, "he (plaintiff) would repay the defendant as soon as he was able;" that he had used to rent the premises for $100 a year. * * * "that by the good will of defendant to plaintiff and his family, plaintiff had been enabled to occupy the said fifth story free of rent, and to make a profit on said premises, and to live and lay up property, as defendant is informed and believes, almost without labor," and claims plaintiff is indebted to him on a fair balance of accounts, $1,000 and upward, &c. In his amended and also verified answer, he alleged as ground for his counterclaim for the said use and occupation of said premises, that plaintiff agreed to pay a reasonable rent therefor, and for the use and occupation thereof, which he avers was reasonably worth $150 a year. On the trial he presented himself as a witness on his own behalf, and swore differently from either of his pre-

vious statements. He says he stated to plaintiff, prior to the renting, that his price for the 5th floor was $100 a year, payable quarterly, and that plaintiff verbally accepted the terms; that he has no recollection of ever afterwards demanding any rent. Plaintiff denies any such agreement, and he (through his wife) to some extent acted as janitor of the building, and as to the terms proposed, which he accepted when he became occupant, he testifies, "He (defendant) says, we might clean the house from the top to the bottom, and we should have free rent;" plaintiff was always paid by defendant for any work he afterwards did on the premises, that had any relation to the premises, and such sums the defendant testifies he afterwards collected of the ground landlord. It would seem from these irreconcilable statements of the defendant under oath, his testimony being wholly contradicted by the plaintiff, to whom the referee has given credit in the conflict on his claim, that he should have been wholly discredited in respect to his counterclaim. It is difficult to apprehend to which of defendant's solemn asseverations under oath as to the terms under which plaintiff occupied said fifth story, the referee has given credence; whether, that plaintiff should repay the defendant for such occupancy as soon as he was able, and that plaintiff occupied free of rent; or that the plaintiff would pay a reasonable rent for the premises, which were reasonably worth $150 a year; or that plaintiff entered under an agreement to rent the premises at $100 a year, payable quarterly. He simply finds that plaintiff, at the time of the commencement of this action, was indebted to the defendant for such use and occupation for a term of years, in the sum of $1,000, but suggests no adjustment of any account between the parties, establishing any such balance, or on what basis that sum had been arrived at, as due the defendant. As defendant's latter statement was also given under oath as evidence on the trial, it is to be presumed that it was upon it that the referee came to such conclusion, and in his report denying any effect to the statute of limitations as against defendant's claim, he must have regarded the successive quarters' rent as they became due, as primarily constituting subjects of an "open and current" book account. How he arrived at

such conclusion it is impossible to conjecture.   Items of accruing rent when so treated, agreed upon or recognized by or between the parties, may become the subjects of an open and current account.   This was held in *Catling* v. *Skoulding* (6 T. R. 189), but such conclusion did not follow from any innate character of the debts so placed in account, which was rent accruing semi-annually on a lease of real estate for a term of fourteen and one-half years, but because the parties had so treated the items of accruing rent between themselves, and made them the subjects of a mutual, open and unliquidated account, whereby, as Lord Kenyon says, " Every new item and credit in an account given by one party to the other is an admission of there being some unsettled account, and any act of the party acknowledging it to be an open account is sufficient to take the case out of the statute."   Our Code of Procedure has introduced somewhat new rules in limitation of actions.   Under it (§ 91) an action on contract, obligation or liability, express or implied, is barred in six years after the cause of action has arisen; by § 110, following Lord Tenterden's act, no acknowledgment or promise will take the case out of the statute, unless " contained in some writing signed by the party to be charged thereby," not, however, altering the effect of any payment of principal or interest. Section 95 of the Code enacts that, " In an action brought to recover a balance due upon a mutual open and current account, where there has been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side." Defendant, so far as appears, never kept any account or any written charges against plaintiff for the use and occupation of said fifth story for the eight and one-half years of such tenancy or occupancy; he never asked the plaintiff for any rent.   He (so far as appears) never made any account or stated his claims in writing, so that any summary of them could be made (*Mills* v. *Fowke*, 5 Bing. N. C. 455; *Ex parte Storer*, Davies [U. S. Dist. Ct. Rep.], 294; *Edmonstone* v. *Thompson*, 15 Wend. 556).

As to plaintiff's demand for one year's rent of $300, payable as alleged at the end of the year, it was presented and claimed at the end of the year.   There is neither allegation or proof

that it was payable quarterly, nor any suggestion made by either party of any right growing out of its being so payable. So that if it were an entire demand due only at the end of the year, a previous destruction of the premises would under the act of 1860, ch. 345, have entirely debarred any claim for rent, while if payable quarterly, the landlord would have been entitled to recover what had previously become due.   By the allegation of the complaint and finding of the referee, plaintiff's claim was an isolated item.   There existed no entries or charges of concurrent debits and credits between the parties, constituting matters of "mutual account," where some item on the one side, operated by agreement between the parties, express or implied, as a set-off or payment *pro tanto* upon the unsettled account of the other.   In this case there had been no *mutual open or current account* between the parties, when plaintiff's right of action accrued, nor had there been any when the defendant's entire claim had matured.   Even if a statement of his demands for quarterly rents accruing prior to May 1st, 1866, had been made by way of an account, plaintiff during no portion of that period had any concurrent account for settlement.   Whatever was then due defendant, the settlement or adjustment of the amount requires no reference to any account of the plaintiff (*Hallock* v. *Lewis*, 1 Sandf. S. C. 220 ; *Kimball* v. *Brown*, 7 Wend. 322 ; *Cunningham* v. *Guignard*, Dudley [S. C.] 351; *Green* v. *Caldstruck*, 1 Dev. & B. [N. C.] 320).

During all the period of the accruing of defendant's claim, there being no mutual open and current accounts or " reciprocal demands" between the parties, there is no pretense of any agreement or concession on the part of the plaintiff that his claim for rent of part of the fourth story for the subsequent year, should in any respect be merged in or set off against the defendant's demand.   Without such agreement, the different claims of the parties being for independent matters, each rests on its own merits, exempt from question as to the operation of the statute of limitations (*Ashley* v. *James*, 11 Mees. & Wells. 542 ; *Williams* v. *Griffiths*, 2 Crom. M. & R. 45).   From these considerations I have come to the conclusion that the defendant's claim for rent, prior to March 10th, 1866, was not in

itself the subject of a book account, although capable of becoming such, by agreement or recognition of it in such an account; that it never became the subject of any "open or current account" with the plaintiff; that were this otherwise, there never existed while defendant's claims or any part of them were accruing, or when they or any of them had accrued or became payable, any "mutual open or current account" between him and plaintiff, nor any "reciprocal demands" between them; that the case was not brought by the defendant within the provisions of § 95 of the Code, and the limitations of § 91 of the Code ran against his entire claim, except what accrued on or after March 10th, 1865, as the statute is pleaded in the reply. Judgment in favor of defendant should be reversed, both as to matters of fact and of law, and a new trial ordered, with costs to the appellant to abide the event, unless defendant consents to reduction of his counterclaim for three quarters rent—$75, due May 1st, August 1st, and November 1st, 1865), to judgment in favor of the plaintiff, for his claim, less that amount, with full costs.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Ordered accordingly.