MATILDA SCHNEIDER, Respondent, *v.* THE CITY OF ROCHESTER, Appellant.

*Constitutional law — charter of the city of Rochester — right of a property owner in an award — right of a city to discontinue proceedings to take property, or to have new commissioners appointed — due process of law — public officers are presumed to act justly.*

A court should not hastily, or without careful deliberation, declare a statute unconstitutional; and he who assails a statute upon this ground must be able to point unerringly to the constitutional prohibition.

A property owner acquires no vested rights in an award, made for property condemned in a proceeding for opening a new street in a city, until the final confirmation of the report of the commissioners of appraisal, and a municipal corporation may be permitted to discontinue proceedings to take property for public purposes at any time before rights, resulting therefrom, have become vested in the property owner.

The provision in the charter of the city of Rochester (Chap. 14 of 1880) to the effect that its common council may, after notice and a hearing, either confirm the report of commissioners of appraisal, or may set it aside and refer the matter to the same or new commissioners, to be appointed by the court, and that the common council may set aside the report and abandon the improvement at any time before the confirmation of the assessment roll, is constitutional.

Where a city charter provides a notice, under which it is reasonably probable that the party proceeded against will be apprised of future proceedings and have

an opportunity to defend, the fact that a common council refuses to confirm the report of commissioners of appraisal, appointed to condemn property to open a street, and refers the matter to new commissioners, does not deprive the property owner of his property without due process of law.

The provision of the Constitution of the State of New York (Art. 1, § 7) that, when private property is taken for public use, not less than three commissioners to appraise the damages shall be appointed, in no manner prevents the appointment of a second commission under a city charter which authorizes and directs such a course, provided that the requisite number of commissioners is selected and they are duly appointed. Public officers, as for example a common council, are presumed to perform their duties, and the court cannot assume that a common council will, to any unreasonable extent, persist in rejecting appraisals of property condemned for a public improvement.

The members of a common council cannot be said to have any pecuniary interest in the result of such proceedings, beyond that of other citizens; and there is no force in an objection that a charter which gives the common council power to reject an appraisal as well as to confirm it, makes the city a judge in its own case, in proceedings to assess damages for lands taken for a public improvement.

APPEAL by the defendant, The City of Rochester, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 5th day of June, 1894, enjoining, restraining and prohibiting the defendant, the City of Rochester, its agents, attorneys, officers and servants from applying to the County Court of Monroe county, or to any other court, for the appointment of commissioners to appraise the damages and compensation which the owners, tenants and occupants of lots 7 and 8 of the Atwater and Andrews tract will be entitled to, by reason of the taking of the same for the purpose of opening a street in said city, and from doing, suffering or permitting any other act in pursuance of a resolution of the common council of said city setting aside the report of a commission to appraise said damages and directing the city attorney to apply for the appointment of new commissioners.

*A. J. Rodenbeck*, for the appellant.

*Elbridge L. Adams* and *Waldo G. Morse*, for the respondent.

WARD, J.:

The plaintiff is the owner of certain real estate in the city of Rochester which the city sought to have condemned in opening a

new street in that city. Pursuant to the charter of the city (Chap. 14 of the Laws of 1880, and the acts amendatory thereof) the common council by ordinance, after the proper preliminary proceedings, determined to open said street and to take proceedings to have the property of the plaintiff condemned for that purpose. The city charter (§§ 175, *et seq.*) provided that the common council or city attorney should cause to be published for ten days in a daily newspaper published in said city a notice specifying and describing the lands or right or easement therein desired necessary for the street, and the portion of the city deemed to be benefited by reason thereof, and that an application would be made to the County Court of Monroe county or to a Special Term of the Supreme Court to be held in the seventh judicial district at a time to be specified in such notice for the appointment of commissioners to ascertain and appraise the compensation which the owners, tenants or occupants of such lands or persons interested therein desired to be taken will be entitled to for the same. The common council or city attorney should also, at least ten days before the time named for such application, cause a notice to be served on each of the owners of the premises, etc., to be taken who were residents of the said county, provided that the fact of such residence be known or can by reasonable diligence be ascertained, or upon the occupants of said premises, either personally or by leaving the same at their several places of abode. At the time specified in said notice, or at such adjourned time as the court might direct, the court should appoint not more than five, nor less than three, commissioners of appraisal, who should be freeholders of the city and not interested in any of the lands sought to be taken, nor of kin to any owner or occupant thereof. The charter further provided that the commissioners, after taking the oath prescribed by the twelfth article of the Constitution, should give public notice, published daily for ten days in at least one of the daily newspapers authorized to publish corporation notices, of the time when and the place where they should meet to enter upon their duties. At such time they should proceed to view the lands and premises proposed to be taken, hear the proofs and allegations of the parties, and after the testimony was closed they should appraise the damages which the owners or the persons interested in the premises to be taken for such public improvement sustained thereby. The commissioners should make

their report to the common council of the city, describing the property taken and stating the amount of damages. The charter further provided: "§ 179. Upon the filing of such report the said common council shall assign a time for hearing objections to the confirmation thereof, and at the time assigned shall hear the allegations of all persons interested, and may take proof in relation thereto from time to time, and shall confirm the said report or may set the same aside and refer the matter to the same or new commissioners to be appointed by the said court, as before, who shall thereupon proceed as hereinbefore provided, but the common council may set aside said report and abandon said improvement at any time before the final confirmation of the assessment roll hereafter mentioned," and "if such report is not appealed from in thirty days, as hereafter provided, or whenever such report is finally confirmed, the common council * * * may take the lands and premises or rights or easements specified in the report of such commissioners, and which have been determined by the common council to be necessary for such improvement on paying the amount of damages or compensation awarded to the owners * * * less the amount of any assessment made against such owner or occupant * * * or depositing the same in some bank in the city of Rochester to the credit of the person to whom the same is awarded." (§ 180.) And when such award was paid the city should become vested with the title to the lands taken, and the charter further declared that any lands thus acquired by the city "shall be deemed to be acquired for public use." (§ 182.) The charter further provided for an appeal by the party aggrieved, within thirty days after such confirmation, to the Supreme Court from the report and determination of the commissioners, which appeal should stay proceedings upon the giving of a bond specified by the statute, and the appeal should be heard by any General or Special Term in the seventh judicial district; if heard by the Special Term an appeal from its order might be taken within ten days to the General Term.

In pursuance of the authority thus given by the charter, on the 18th day of January, 1894, the County Court of Monroe county, upon due notice, appointed three commissioners that were qualified by the statute as such to appraise the damages and the compensation of the owners for taking the lands necessary for such street.

The commissioners duly proceeded, after giving the notice required by statute, and appraised the damages of the plaintiff at $40,000. Their report was presented to the common council on the 29th day of March, 1894, and the common council fixed the third of April following as the time of hearing objections to the confirmation of the report, and at such time, it being a regular meeting of the common council, the report was presented for action. The plaintiff was present; no allegations were made against the confirmation of the report except by the city attorney of Rochester, who made objections. The common council refused to confirm the report, but resolved that it be set aside and referred back to new commissioners to be appointed by the Monroe County Court as provided by the city charter, and the city attorney was directed to make the necessary application. In attempting to carry out that purpose the defendant was enjoined from proceeding therein by an order of the Special Term of Monroe county, and an appeal from that order brings the questions before us that we will proceed to consider.

We are favored with an opinion from the learned judge who granted the order at Special Term, in which the reasons for the order are stated, and those reasons are supplemented by the points of the learned counsel for the respondent. They are in effect that the plaintiff had a vested interest in the award made by the commissioners, and had the right to have it enforced; that the provision of the charter permitting the common council to set aside the report and to take proceedings for the appointment of new commissioners was in violation of article 1, section 6 of the State Constitution, which provides that: "No person shall * * * be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation;" and that inasmuch as the Constitution provides (Art. 1, § 7) that when private property shall be taken for public use *compensation shall be made therefor*, which compensation shall be ascertained by a jury or by not less than three commissioners appointed by a court of record as prescribed by law, and the power having been executed in the methods prescribed by the Constitution it was spent, and neither another or successive commissions could be appointed at the instance of the defendant; that to permit the appointment of successive commissions and the securing of successive awards to be in turn

rejected until one was obtained satisfactory to the defendant was an oppression which violated the spirit of the Constitution and could not be sustained.

It will be seen, therefore, that a grave question is presented which requires our careful consideration. The duty of the court in passing upon the constitutionality of an act of the legislative branch of our State government cannot be better stated than to quote from the opinion of the learned judge at Special Term in which he says "the court should not hastily or without careful deliberation declare a statute unconstitutional," and then quotes from *The People ex rel. Bolton* v. *Albertson* (55 N. Y. 54): "A law which has received the sanction of the Legislature and the approval of the executive should only be held void as repugnant to the Constitution when the repugnancy is clearly demonstrated. * * * There should be no reasonable doubt of the unconstitutionality of a statute before it should be annulled by judicial action."

The Legislature in the domain of legislation is supreme except as limited by the Constitution of the general or State government. He who assails the statute as unconstitutional must be able to point unerringly to the constitutional prohibition. Before the plaintiff can complain she must have a vested right in the award of the commissioners or at least in the procedure creating it.

The decisions of the courts of this State are uniform to the effect that until the final confirmation of the report of commissioners in such cases the property owners acquire no vested rights in awards made to them. (*Matter of Canal Street*, 11 Wend. 154; *Matter of Anthony Street*, 20 id. 618; *Matter of Military Parade Ground*, 60 N. Y. 319; *People ex rel. Dikeman* v. *President, etc., Brooklyn*, 1 Wend. 318; *The Corporation of New York* v. *Mapes*, 6 Johns. Ch. 49; *Martin* v. *The Mayor, etc., of Brooklyn*, 1 Hill, 545.)

In *The Corporation of New York* v. *Mapes* (*supra*) the corporation sought to restrain the landowner from making improvements upon the premises sought to be taken. The injunction was refused and the chancellor says: "Perhaps the better opinion is that the corporation are not bound to go on, but may recede and abandon their plan at any time before the commissioners of assessment shall have reported and their report shall have been confirmed."

In *The Matter of the Application of the Commissioners of Washington Park of Albany for Leave to Discontinue Proceedings to Condemn Lands, etc.* (reported in 56 N. Y. 144), the court, by RAPALLO, J., reviewed the question with his usual clearness, saying : "There is a strong equity in the claim made by the appellants * * * that the election to take their property, when once exercised in such manner as to bind the owners, should be equally binding upon those who are empowered and elect to take it, and that the owners should not be exposed to repeated applications for this purpose, which might result not only in keeping them in perpetual suspense as to their ownership, but might enable the other party to abuse the power intrusted to it by repeatedly making and withdrawing applications until it shall obtain an appraisal satisfactory to itself, and thus deprive the owners of that just compensation for their property which is guaranteed to them by the Constitution of the State."

In answer to the equitable consideration above quoted, which is substantially the argument of the respondent here, Judge RAPALLO says: "On the other hand, it must be considered whether the apprehension of such an abuse of power is sufficient ground, in the case of a public improvement carried on by public officers, to absolutely preclude them from discontinuing their proceedings on discovering that the expense involved, and which is to be defrayed by the public or by assessments upon other property owners, will exceed the benefit to be derived from the improvement."

And after stating that the English courts sustain the position contended for by the property owners in that case, that the corporation having elected to take the property for the public purpose could not recede, the Court of Appeals proceeds to assert this doctrine : "A long series of decisions has established that in these street cases the corporation may be permitted to discontinue proceedings at any time before rights resulting therefrom have become vested in the property owners. They further hold, differing in this respect from the English cases, that no such rights are vested until the report of the commissioners is finally confirmed and there is a final award in the nature of a judgment in favor of the property owners for their compensation." In that case (*Matter of Comrs. of*

*Washington Park, supra*) the commissioners of appraisal had met and appraised the property, and had announced their determination in several cases, and then the corporation instituted the proceeding for leave to discontinue the condemnation proceedings, and succeeded. The statute in this case, however, sets the question at rest, as it does not permit the city to interfere with the possession of the landowner or vest any title in the city until the compensation is paid. The policy of permitting the abandonment of proceedings or the appointment of new commissioners in such cases was inaugurated early in the history of this State. Section 178 of chapter 86 of the Laws of 1813, relating to New York city, provides in this respect that " Upon the coming in of the said report, signed by the said commissioners or any two of them, the said court shall, by rule or order, after hearing any matter which may be alleged against the same, either confirm the said report or refer the same to the same commissioners for revisal and correction, or to new commissioners to be appointed by the said court to reconsider the subject matter thereof," etc., and in the consolidated laws relating to New York city (Chap. 410 of the Laws of 1882), in section 1003, it is provided that as to laying out and opening certain streets and avenues in the city the board of street opening of the city was authorized to discontinue any and all legal proceedings taken for laying out streets, at any time before the confirmation of the report of the commissioners of estimate and assessment in such proceedings, if, in the opinion of said board, the public interests require such discontinuance, and *with power to cause new proceedings to be taken in such cases for the appointment of new commissioners.*

The constitutionality of these new provisions never seems to have been assailed by the courts.

By chapter 360 of the Laws of 1867 (§ 25) the trustees of the village of Rhinebeck were vested with a similar authority to that of the common council of the city of Rochester in regard to laying out, extending, etc., streets and alleys in the village. Upon the coming in of the report of the commissioners of assessment of damages the trustees were empowered to annul the same, or " they shall refer the matter back to the same commissioners, or to three others to be appointed on their application, without further notice, by some court of record." The constitutionality of this provision came before the

Court of Appeals in *The Matter of Laying Out, etc., Livingston Street, in the Village of Rhinebeck* (82 N. Y. 621), where the precise question as to the appointment of a second commission after the report of the first, and before the confirmation had taken place, was passed upon, and the court held the act constitutional, which would seem to dispose of the respondent's contention in that regard.  The land of the respondent cannot be taken except upon payment of compensation to be finally fixed.  Until the confirmation of the report of the commissioners, or of some commissioners, the proceedings are incomplete and initiatory, and there is no invasion of the landowner's possession, and the statute provides for notice to him of the appointment of every commission and of its sessions, so that he has his day in court in all important proceedings which have reference to his property.  The commissioners are not appointed by either party to the proceeding, but by the court.

The scheme of the statute seems to be that the corporation, representing the whole people of the municipality, the property owner, the taxpayer, and the interests involved in public improvements, shall not be bound by the action of the first commission if that action be arbitrary or unjust, or award excessive damages either through mistake, ignorance or corruption.  A corrective power exists in the court, not only on the application for the appointment of commissioners, but on appeal.

The plaintiff claims that this proceeding may deprive her of her property without due process of law.  This provision of the Constitution does not require a legal proceeding according to the course of the common law, nor must there be a personal notice to the person whose property is in question.  It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on and an opportunity offered him to defend (*Happy* v. *Mosher*, 48 N. Y. 313), and the Legislature has the right to take away a particular form of remedy and give a new one.  (*People ex rel. Witherbee* v. *The Board of Supervisors of the County of Essex*, 70 N. Y. 228; *Stuart* v. *Palmer, as Collector, etc.*, 74 id. 183; *In the Matter of the Estate of Curry, Deceased*, 25 Hun, 321.)

The contention of the plaintiff, that commissioners, having been once appointed and having acted, the power was spent under the

Constitution (Art. 1, § 7) which provides for the appointment of not less than three commissioners to appraise the damages, cannot be sustained.

The Constitution requires that they shall be appointed by a court of record as prescribed by law. We see nothing in this provision to prevent the appointment of a second commission if the law so provides, if they are of the requisite number and appointed by the proper authority.

It is a matter of constant practice by the courts to set aside the action of commissioners of appraisal and appoint new ones. In the familiar proceedings to lay out highways and to assess damages for taking the land of the owners through which the highway is laid out the County Court may appoint successive commissions until it is satisfied that the statute has been complied with. (§ 89 of the Highway Law, chap. 568 of the Laws of 1890.)

In actions of ejectment triable by statute and under the Constitution by a jury, after a verdict for the plaintiff, the defendant may take a new trial, as of course, upon payment of costs, under section 1525 of the Code of Civil Procedure. Certainly the vested right of a plaintiff in ejectment to a verdict recovering real estate is as great as the vested right of a landowner in an unconfirmed report of commissioners to assess damages.

We entertain no doubt of the power of the court to appoint this second commission. If the statute authorizing it be oppressive and unjust it is not for the court to do away with it by judicial action unless it violates the Constitution. The remedy of a party complaining of such a statute is to apply to the Legislature and not to the court; nor is there any force in the position that the charter makes the city a judge in its own case in the proceedings to assess damages because the common council has power to reject an appraisal as well as to confirm it. The common council, it is true, in a sense represents the city, but it is charged with public duties; its members have no pecuniary interests in the result of the proceedings to appraise damages any more than any other citizen. The common council did not appoint the commissioners, as we have seen, and it is not to be assumed that the courts will appoint commissioners at any stage of the proceedings who would not perform their duties; nor are we to assume that the common council, in the discharge of its

duties, would persist in rejecting appraisals to any unreasonable extent, because until an appraisal is confirmed the purpose of the common council in taking the lands for public purposes cannot be accomplished.

Our judicial history, as far as our investigation discloses, fails to show any abuse of the power in the court to appoint more than one commission. In condemnation proceedings three separate commissions were appointed in one matter. (See *Matter of Dover St.,* 18 Johns. 507.)

The Legislature in its discretion has clothed these officers with this duty, and it can be exercised by no other person or tribunal. The duty must be performed by the common council or not performed at all. Even in case of a judicial officer, where he has not such an interest in a cause or matter as that the result must necessarily affect his personal or pecuniary interest, or where his interest is minute, and he has so exclusive a jurisdiction by Constitution or statute that his refusal to act in the cause or matter will prevent any proceeding in it, he may act so far as that there may not be a failure of remedy. (*Matter of Ryers,* 72 N. Y. 1, and cases cited.)

Many other public officers are required by statute to pass upon matters involving their own pecuniary interests. A town assessor takes part in assessing his own property. Members of boards of supervisors and town auditors pass upon their own accounts. (*Matter of Ryers, supra,* 14, 15.)

Nor does the forming of an opinion as to the matter in hand disqualify the members of a common council of a city from discharging a duty imposed upon them by statute. (*People ex rel. Burby* v. *The Common Council,* 85 Hun, 607.)

These views lead to the conclusion that the statute referred to is not in violation of the Constitution ; that the proceeding complained of was a valid and legal one, and that the preliminary injunction should be dissolved.

The order for such injunction should be reversed, but without costs to either party.

BRADLEY, J., concurred ; LEWIS, J., not voting.

Order reversed, without costs.