[*114]       *PATTERSON v. THE MAYOR, &c., OF THE CITY OF NEW
                          YORK and J. R. PETERS.

             The Court of Chancery has no power to review upon the merits the proceed-
                ings of the commissioners of estimate and assessment of damages in open-
                ing streets in the city of New York.[1]
             Where the commissioners, after they had deposited a copy of their report in
                the clerk's office, pursuant to the 182d sec. of the act of the 9th of April,
                1813, (2 R. L. 417,) altered their assessment of damages, it was held not
                to be necessary to deposit a new copy of their report in the clerk's office,
                or to publish a new notice to propose objections to the assessment.
             But if it was necessary to file a new copy of the report and publish a new
                notice, the omission to do so would only render the proceedings voidable;
                in which case, the remedy would be by certiorari.
             The Court of Chancery has no jurisdiction in such cases, unless the proceed-
                ings are wholly void.

June 8th.        THE complainant filed his bill in this cause for relief
             against an order of the Supreme Court, made in August
             term, 1827, confirming the report of commissioners of esti-

             [1] Wiggin v. Mayor of New York, 9 Paige, 16.   Whiting v. Mayor of New
             York, post, 548.

mate and assessment, in relation to the improvement of
Herring street, between Christopher and Amos streets, in
the ninth ward of the city of New York. He complained
that after the commissioners had deposited a copy of their
report in the clerk's office, agreeably to the provisions of
the 182d section of the act of the 9th of April, 1813, (2 Rev.
Laws, 417,) in which he was allowed $500 for his damages,
they reduced that allowance to $250. He alleged that he
made no objection to the first sum, and was not aware of
the alteration in time to apply to the Supreme Court to
oppose the confirmation of the report; and he prayed an
injunction to restrain the corporation from completing the
improvement by removing his dwelling-house, &c.

An *ex parte* application having been made for the in-
junction, the Chancellor directed notice of the application,
and a copy of the bill to be served on the attorney of the
corporation.

*J. Grim,* for the defendant, cited *Gardner* v. *The Trus-
tees of Newburgh,* (2 John. Ch. Rep. 162,) and 15 John.
Rep. 537.

\**M. Ulshoeffer,* for the defendants, cited *Leroy* v. *The
Corporation of New York,* (4 John. Ch. Rep. 352;) *Jerome*
v. *Ross,* (7 John. Ch. Rep. 315;) Salk. 148; 1 Bac. Abr.
tit. *Certiorari,* g.; 20 John. Rep. 430.

THE CHANCELLOR:—Two questions arise in this cause,
which it may be necessary to consider. 1st. Was there any
irregularity in the proceedings complained of? 2d. If
there was irregularity, has this court jurisdiction to stay the
proceedings of the corporation by injunction? The cases
of *Leroy* v. *The Mayor, Aldermen and Commonalty of the
city of New York,* (4 John. Ch. Rep. 352,) and *Mooers* v.
*Smedley,* (6 John. Ch. Rep. 28,) conclusively settle the prin-
ciple, that this court is not authorized to review the pro-
ceedings on the merits.

The alleged irregularity is, that the commissioners altered

1828.

Patterson
v.
Corporation of
N. York.

[\*115]

1828.

Patterson
v.
Corporation of
N. York.

the assessment and reduced the amount allowed to the complainant, without any written objections being put in by him, and without notice to the complainant to appear and oppose. On looking into the statute under which these proceedings were had, I am inclined to believe it was not intended by the legislature that any further notice should be given than the one which was published in this case. In the assessment and appraisal of damages in these street cases, what is allowed to that class of persons whose property is taken for the improvement, is to be charged upon another class whose property is supposed to be benefitted thereby. The necessary result of this is, that if any one objects to the amount allowed to or assessed upon himself, the commissioners cannot alter that allowance or assessment without making a corresponding change in relation to some or all of the others.

The statute directs the deposit of the copy of the report and public notice thereof to be given in the newspapers, and of the time and place of presenting the report to the Supreme Court for confirmation. If any person is dissatisfied, he may within ten days make his objections in writing to the commissioners; and if objections are made, they must review the assessment before presenting it to the court. The legislature *never could have contemplated the deposit

[*116]

of a new copy and a new notice to propose objections, as often as the commissioners reviewed their assessment. Such a construction of the act would be productive of great and unnecessary delay, and would be inconsistent with the provision which directs the notice of presenting the report to the court to be given at the same time with the notice of the depositing the copy for inspection, that objections in writing may be made thereto. The notice to propose objections to the report is a sufficient notice to those who are satisfied with the original report, to appear before the commissioners and oppose any alterations which may be proposed by the persons objecting. At the expiration of the ten days, they can apply to the commissioners and as-

certain whether any objections are made, and they will then be at liberty to be heard in opposition thereto. If the commissioners decide in favor of the objections, the original notice points out the time and place for the persons aggrieved thereby to appear before the Supreme Court and oppose the adoption of such amended report.

But if the proceedings were irregular in this respect, this court cannot interfere, unless the irregularity is such as to make the whole proceedings void. Probably this court would not suffer the corporation to pull down the complainant's house, and dispossess him of his property under color of authority, where the whole proceedings were absolutely void. But if there is an irregularity which renders the proceedings voidable merely, this court has not jurisdiction to afford the relief sought. Persons other than the corporation have rights vested under the order of confirmation, which can only be divested by a direct proceeding, to annul the order of confirmation. The result of a reversal on *certiorari* would be to vacate the proceedings, so far as they had been irregular, and to place the parties in the situation in which they were before the order of confirmation. But the effect of a perpetual injunction to stay the defendants from pulling down the complainant's house, would be to prevent the contemplated improvement, and at the same time leave the corporation liable to the other persons, in whose favor damages have been allowed.

*In this case the proceedings were, at most, voidable; they were not void.

If the complainant was entitled to notice to appear before the commissioners and oppose the reduction of his allowance for damages, he had a perfect remedy at law by *certiorari*. He was apprised of the alteration in August term, 1827; and if he had then applied for and obtained that writ, he would long since have had the decision of the proper tribunal on his case. He had no right to expect the corporation would pay the difference between the original and the amended reports. If he is entitled to the larger

[*117]

sum, it must be assessed upon those who are benefited by the contemplated improvement.

The motion for the injunction must be refused with costs.