IN THE MATTER OF THE APPLICATION OF DAVID R. RYERS et al., Commissioners, etc., for Audit of Accounts.

An order of the County Court, under the Drainage Act (chap. 888, Laws of 1869, as amended by chap. 303, Laws of 1871), auditing and confirming the accounts of commissioners appointed under said act, is appealable to the General Term of the Supreme Court upon questions of law.

The provision of said act (§ 12), making the decision of the County Court final, only applies to and makes the order final upon matters of fact.

Such an order is a final order in a special proceeding, affecting a substantial right, and so is reviewable here.

The commissioners, authorized to be appointed under and by said act, are officers included in one or the other of the classes whose election or appointment is, by the Constitution (art. 10, § 2), left under the control and direction of the Legislature, and the provision of said act, as to their appointment, is in accordance with the constitutional requirement.

Whether the provision of said act (§ 17) authorizing the commissioners appointed by a county judge to act in more than one county is valid, quære.

If invalid, it is separable from the other provisions, and does not invalidate the appointment by a county judge of commissioners to act solely in and for his own county.

That act is not violative of any constitutional provision. It does not authorize the taking of private property for a private use; the object for which drainage may be had and lands taken, under the act, is solely the public health, and this is a public purpose. It does not infringe the constitutional provision prohibiting the taking of property without "due process of law:" (Art. 1, § 6), the property of the citizen is reached

under the act in two ways only, by assessment, a mode of exercise of the power of taxation, and so constitutional, and by taking land needed, and making compensation, which is not violative of the constitutional provision.

Where a judicial officer has not such an interest in a cause or matter as that the result must necessarily affect his personal or pecuniary interest, or where his interest is minute, and he has so exclusive a jurisdiction, by Constitution or statute, that his refusal to act in the cause or matter will prevent any proceeding in it, he may act so far as that there may not be a failure of remedy.

The provision of the statute (2 R. S., 275, § 7) declaring that no judge shall sit in a case where he is interested, is as much affected by the necessity existing or created by the conferment of exclusive jurisdiction by another statute as is the similar rule of common law.

Accordingly, *held*, that prior to the passage of the amendatory act of 1871 (§ 4, chap. 303, Laws of 1871), vesting in the County Court the powers conferred by the original act upon the county judge, a county judge was not disqualified from making an order appointing commissioners under said act, although it appeared by the petition that he was interested in the matter as owner of lands to be affected.

In such case neither the provision of the Constitution (art. 6, § 15) providing that the county judge of one county may hold county courts in other counties, nor the provision of the Code (§ 30, sub. 13), providing for certifying actions or proceedings in the County Court to the Supreme Court, applied.

The authorities as to disqualification of judges because of interest, both at common law and under the statute, collated and discussed.

(Argued November 20, 1877; decided January 15, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, affirming an order of the County Court of Richmond county auditing and confirming the accounts of commissioners appointed under the General Drainage Act (chap. 888, Laws of 1869), to drain lands in said county. (Memoranda of decision below, 10 Hun, 93.)

The order appointing the commissioners was made by the county judge of said county in March, 1870. It appeared by the petition that he owned lands affected by the proceedings. The County Court, by whom the order appealed from was granted, was held by the county judge of Kings county, he being appointed to hold said court for the purposes of the

application because of the interest of the county judge. The order was granted in April, 1876.

The further material facts are stated sufficiently in the opinion.

*Geo. P. Avery*, for appellant. The order appealed from is reviewable in this court. (§ 11, ¶ 3 of Old Code.) The legislative power is limited by implication as well as by the words of the Constitution. (*People* v. *Draper*, 15 N. Y., 544; *Board of Health* v. *Heister*, 37 id., 676; Const., art. 7, §§ 10–12.) The General Drainage Acts of 1861 (chap. 143) and of 1851 (chap. 345) are unconstitutional and void. (*White* v. *White*, 5 Barb., 483; *In re Town of Chili*, 5 Hun, 116.) The power to determine a use to be public is solely in the judiciary. (*Taylor* v. *Porter*, 4 Hill, 145; *Rockwell* v. *Nearing*, 35 N. Y., 305; *Wynheimer* v. *People*, 13 id., 174; *In re Townsend*, 39 id., 174; *Weismer* v. *Village of Douglas*, 64 id., 94; *In re Deansville Cemetery*, 3 N. Y. W'kly Dig., 289.) The order of the county judge did not make valid the illegal acts of the commissioners. (*Clark* v. *City of Rochester*, 28 N. Y., 606.) The commissioners could not be appointed as newly created county officers. (*People* v. *Pinckney*, 32 N. Y., 386.)

*Geo. J. Greenfield*, for respondents. If an appeal would lie from the order of the General Term, it could only be from questions of law raised at the accounting. *In re Town of Chili*, 5 Hun, 116. The act of 1869 (chap. 888) rendered the general drainage act constitutional. (*In re Town of Chili*, 5 Hun, 116; *People ex rel. Williams* v. *Harris*, 49 N. Y., 587; *People* v. *Nearing*, 27 id., 306; *Parker* v. *County Court of Jeff. Co.*, 55 id., 604.) The judge who made the order appointing the commissioners was not disqualified from acting. (*People* v. *Wheeler*, 21 N. Y., 83, 84; Lans. 1871, chap. 303, § 20, p. 607; Laws 1869, chap. 888; *Lynch* v. *Livingston*, 2 Seld., 433; *People* v. *Clark*, 21 Barb., 216; *Foot* v. *Stiles*, 57 N. Y., 405; *Baldwin* v. *McArthur*, 17

Barb., 423; *In re Leefe*, 2 Barb. Ch., 39; *People* v. *Edmonds*, 15 Barb., 530, 531.)

FOLGER, J. We think the order is appealable. The act of 1869 (Laws of 1869, chap. 888, p. 2223, § 12), gives an appeal on questions of law from the decision of any county judge to the Supreme Court. The act of 1871 (Laws of 1871, chap. 303, p. 603, § 4), which substituted the County Court for the county judge, brings, in effect, the order of the County Court under the same right of appeal. The provision in section twelve of the act of 1869, that the order made on application for an accounting is final, must be harmonized with the provision of the same section for an appeal on questions of law. The two provisions are to be construed as making the order final upon matters of fact, but liable to appeal upon any question of law, arising upon the whole act or upon any proceeding necessarily affecting that order. This comes from the peculiar provisions of the act, as was the case in *N. Y. C. R. R. Co.* v. *Marvin* (11 N. Y., 276); *In re Canal, etc. Sts.* (12 id., 412); *In re Dodd* (27 id., 629); *King* v. *The Mayor* (36 id., 182); *In re Appn. of Mayor* (49 id., 150); *In re Central Park* (50 id., 493); *People* v. *Betts*, (55 id., 600.) When the order of the County Court was reviewed by the Supreme Court, the order of the latter court fell among the provisions of the Code in relation to appeals to this court from orders. For there are no words in the acts of 1869 or 1871 restricting the right of appeal therefrom. It is appealable to this court, if it is a final order made in a special proceeding and affecting a substantial right. It affects a substantial right, for it determines the amount that the commissioners of drainage may obtain from the owners of lands affected. It is a statutory, and therefore it is a special, proceeding. It is a final order, for it is the last order in the line of the provisions of the statute. It is last, also, from the matters with which it has to deal, for it is a final adjudication, so far as the County Court is concerned, upon the statement and claims of the commissioners of all

sums received and collected by them, and all expenses and disbursements and claims for personal service and expense. The order provided for in section ten is somewhat like it, but that precedes the levying and collection of assessments. This order, under section twelve, must follow the levying and collection of assessments, otherwise it cannot pass upon the amount collected by the commissioners, which is a special office of it.

This brings us to a consideration of the points made in this court by the appellants. The first point involves the consideration of whether the commissioners of drainage had their appointment from an authority constitutionally empowered to create them. It is easily conceded that they are not State officers in a sense which requires the appointment of them to come from a power, authorized to appoint what are known in the Constitution as State officers. It may be that they are not county officers, in a sense which will make the county, the judge of which appoints them, liable for their acts or omisions. (*Maximilian* v. *The Mayor*, 62 N. Y., 160.) That they are officers, however, if lawfully appointed, admits of no dispute. (*People ex rel* v. *Nostrand*, 46 N. Y., 375.) They are either officers, whose election or appointment is not provided for by the Constitution ; or they are officers of a county, whose election or appointment is not provided for by the Constitution; or they are officers non-descript in the Constitution, whose offices have been created by law after the adoption of that instrument. Be they either of these, the Constitution (art. 10, § 2), permits the appointment of them by such county authority as the Legislature shall direct, or authorizes their election or appointment as the Legislature may direct. By this act of 1869, the Legislature has directed by what county authority these commissioners shall be appointed, and thus the Constitution is met and fulfilled. The Drainage Act of 1869, (§ 1), under which they were appointed, in terms authorizes an appointment by a county judge, of commissioners to act upon lands in more than one county. Whether in that respect the act is valid, we need not now inquire.

That provision is easily separable from the other provisions of the section, and though it should turn out that it was invalid, it would not vitiate the appointment of them for the single county of Richmond. (*The People ex rel.* v. *Bull,* 46 N. Y., 57–60; *The Same* v. *Green,* 58 id., 295–303.) In this case the lands to be affected are in a single county. These officers are confined by the petition for their appointment and by the order therefor to those lands. No suggestion is made or appears on the record, that they have sought, or will seek, or need to seek, to exercise any authority over lands in another county. Indeed, it is impracticable, from the nature of things, so to do. Richmond county is composed entirely of islands. (3 R. S. p. 2, § 2, subd. 4.) So that these officers in fact had their appointment for a district theretofore well specified, distinct and organized. The limitations to legislative power pointed out in *People* v. *Pinckney,* (32 N. Y., 383), and kindred cases, do not apply here.

To notice a suggestion made upon the appellant's points; the question of the power of the commissioners to issue evidences of indebtedness for any municipality, or for any supposed principal of which or whom they are agents, is not now so directly before us, as that we must determine whether such evidences of indebtedness are valid obligations.

It is claimed that the General Drainage Act of 1869 is unconstitutional. The general act which appears in the Revised Statutes (2 R. S., 548), it seems, was declared by this court to be unconstitutional. (See *White* v. *White,* 5 Barb., 474, citing *Gilbert* v. *Foote,* so far as I find, never reported.) It is understood that the judgment of this court in *Gilbert* v. *Foote,* to that end, went mainly upon the ground that the act sought to permit the taking of private property for a private use, which was not a use for a private way. (See *In re Drainage, etc.,* 5 Hun, 116.) For the years immediately before 1869, in consequence probably of that decision in *Gilbert* v. *Foote,* the Legislature was burdened with proposed local bills, and enacted local laws, for drainage of lands; as the Session Laws and journals of the years will

show.    In that year the Legislature sought for its own relief, and in the spirit of the Constitution averse to local and special legislation, to provide a general act for the drainage of swamps and the like.    The power of the Legislature to enact these "Drainage Acts" has been put by some courts, on what is said to be a right to prescribe public regulations, for the more economical management of property of persons whose lands adjoin, or which for some reason can be better managed and improved by some joint operation.    (*Coster* v. *Tide-Water Company*, 18 N. J. Eq. [3 C. E. Green], 54; *O'Reiley* v. *Kankakee, Draining Co.*, 32 Ind., 169.)    We do not wish to rest on such a proposition.    It is better, we think, to place it on the right to take private property for public use, making due compensation therefor; and to declare that to take for the maintenance and promotion of the public health, is a public purpose.    It will be seen, from a scrutiny of the act of 1869, that the object for which drainage may be had by its pro visions is solely the public health.    Though the first lines of the first section look to a private object, the whole scope of the act, and many of its special provisions, strictly confine the object of the proceedings to a benefit of the public health. (See §§ 1, 2, 4, 6, 16; 5 Hun, *supra*.)    That the promotion and preservation of the public health is a public purpose, cannot be doubted.    The legislation of the State in creating boards of health in cities, villages and towns, and vesting in them great, if not extreme and arbitrary powers, shows this. There is scarcely any one object which has been the subject of more enactments than this, or as to which more power is given to officials over the citizen and his property, and by more summary proceedings.    Indeed, it is a recognized con stitutional power of legislation, to provide for removing or abating that which, though at first lawful, proper and unob jectionable, has afterwards become a public nuisance endan gering the public health.    (*Miller* v. *Craig*, 3 Stockt. [N. J.], 175; *Brick Church* v. *The Mayor*, etc., 5 Cow., 538; *Coates* v. *The Same*, 7 id., 585.)    And this general power has had and may have particular application to the drainage of swamps

and marshy and wet lands. (*Reeves* v. *Treas.*, etc., 8 Ohio St.,
333.) We are not called upon in this case to uphold an act
which has for its purpose the benefit of individuals. As
before said, it avows, and avows only, a public purpose. No
action, purporting to be under it, which is shown to have
other object than to maintain the public health, can or will
be sustained under our present Constitution. It may have
been different heretofore ; (*French* v. *Kirkland*, 1 Paige,
117; *Philips* v. *Wickham*, id., 590) ; and drainage acts
of the Legislature, not having in view the public health solely,
have been recognized and acquiesced in by the courts. But
we wish to be distinctly understood, that we sustain this act
as constitutional solely, for that it plainly has for its purpose
the preservation and promotion of the public health. We
will be jealous of any attempt to swerve the powers given
by it to the advantage of individuals. That the public pur-
pose may be sought and attained, and private benefit also
found, is not improbable. So it is when private property is
taken for the public purpose of a railroad, and in quite as
great degree, but in such case the private interest promoted
is said to be incidental. (*Sessions* v. *Crunkilton*, 20 Ohio
St., 349; see, also, *Beekman* v. *S. & S. R. R. Co.*, 3 Paige,
45.) And though the works authorized to effect this public
purpose are in any case not extended beyond a particular,
and it may be a small district, the purpose is the same and
is public, (*Hartwell* v. *Armstrong*, 19 Barb., 166, and see
*Talbot* v. *Hudson*, 16 Gray, 417 on this specific question.)
That the power given by this act may be abused, as was so
forcibly presented by the learned counsel for the appellants
in his oral argument, is too true. It is a lamentable fact that
all lawful power may be abused. Yet it is no argument
against the existence of power, that in bad or incompetent
hands it is abused. The Legislature has done no more than
the Constitution permitted, in providing in general terms, a
way for the promotion and preservation of the public health.
It is still for the judiciary to see to it that each occasion
sion presents the necessity for the work, and that the purpose

to be reached is public. And with all that has been said in oral argument and presented upon the printed points, no facts appear upon the record, nor does there appear to have been any attempt to show them, to the end that the purpose of the work contemplated in this case is not public, or that there was not a necessity for it; while, on the other hand, the commissioners appointed, under their oath of office and after personal view, have declared the necessity of the work for the public health, and the county judge under his official responsibility has decided in the same way, (§§ 2, 3, 4); nor does it appear that on the presentation of their report to the County Court there was any allegation against the truth of it in that regard. Therefore, as the act provides for a public purpose, and there is evidence that the power given by it has been used for that purpose and that there was a necessity therefor, we see no reason why on the point now under consideration we should reverse the order.

It is further claimed that the act provides for taking away of property of a citizen without due process of law. The specific provisions of the act refute this allegation. The commissioners are to determine, by personal view, what lands are to be taken for ditches. (§ 4.) They are to file their determination in writing, and to give notice to all whom it may concern; and any person feeling aggrieved has a right of appeal therefrom to the County Court, which shall hear the appeal on notice to the appellant. (Act of 1869, § 5; Act of 1871, § 4.) The land taken for the construction of the drains shall be paid for to its value, and any other injury the owner may sustain, at the time when, or before, the work is begun (§ 9 of act of 1869); and the proceedings to reach the amount of compensation are the same as those provided by law in taking lands for railroad purposes. (Id.) The assessments to be laid on the lands claimed to be benefited are to be reviewed by the County Court, on the motion of any one interested. (§ 10.) Now, all this is in the line of legislation, which has been sanctioned for years, and held to be within the constitutional power of the Legislature over such

subjects. (*The People* v. *The Mayor*, 4 N. Y., 419; *The People* v. *Smith*, 21 id., 595.) There are but two ways, under this act, by which the property of the citizen may be reached; one is by assessment. That is declared in 4 N. Y. (*supra*), to be but a mode of the exercise of the power of taxation, and therefore constitutional. The other is by taking the land needed, and making compensation therefor. That is said, in 21 N. Y. (*supra*), not to be within the provision of the Constitution as to " due process of law." " Due process of law," in the fourteenth amendment to the United States Constitution does not mean by a judicial proceeding. (*McMillen* v. *Anderson*, MS., U. S. Sup. Ct., Oct., 1877; *Murray* v. *Hoboken Co.*, 18 How. [U. S.], 272; *Davidson* v. *Adm'rs, etc.*, U. S. Sup. Ct., 1878.)

The next point of the appellants arises in this way: Judge METCALFE, the county judge of Richmond county, made the first order in these proceedings, that appointing the commissioners, whose official duty it was first to determine upon the necessity of the work, and then to carry it forward, and to determine what and whose lands were to be taken, what and whose lands were to be benefited, and the amount of the assessment upon the lands of each owner. It is urged that it was an important duty to make the selection of men for an office of so extensive powers as those appertaining to these commissioners; powers which, in their exercise, would affect every owner of land likely to fall or be brought within the scope of the undertaking. Now, it was upon the face of the petition, which was presented to Judge METCALFE, that he was interested in the matter as an owner of some of the lands to be affected. It is claimed that he was thereby disqualified from acting, and that his order appointing the commissioners was void, and that, as it was the base of the whole proceeding, it failing, the whole failed. It is a rule of the common law, that " no man can be a judge in his own cause." It has been said that this rule still prevails, though he be the only judge who can have jurisdiction of the case. (*Anonymous*, Salk., 396.) A reference to that case does not

show that such was the judgment of the court there, but that it was a remark of HOLT, C. J., which he also made in what would seem to be another case. (Salk. 201.) In another case, *Mayor of London* v. *Markwick* (11 Mod., 164), HOLT, C. J., was of the same opinion; but POWELL, J., *contra*, said, " he agreed that, regularly, a man cannot be judge and party; but in a case of necessity he may; as if a real action be brought against all the judges of the C. B." In that case it appeared that the mayor was not a necessary part of the inferior court, and it also not appearing that he gave the judgment, the action of the inferior court was held good. So, too, in *The Matter of the Parishes of Great Charte and Kennington* (2 Strange, 1173), it was said, that as to the case of corporations, if it appeared that there were no other justices, a party interested might be a judge, to prevent a failure of justice. And to the same effect is *Comm.* v. *Ryan* (5 Mass., 92); recognized in *Pearce* v. *Atwood* (13 id., 340). In *Heydenfeldt* v. *Towns* (27 Ala., 423), it is said that it is doubtful whether the rule applies in a case where the interest is not immediate and no other judge can act. In *Dimes* v. *Gr. Junc. Can. Co.* (3 H. of L. Cas., 759), it was held that the lord chancellor was disqualified by his interest, but that he could enroll the decree of the vice chancellor, so that there could be an appeal, notwithstanding the act of enrollment involved an exercise of discretion, for it was a case of necessity; and where that occurred, the objection of interest could not prevail ; and the case was cited to which allusion was made by POWELL, J., as appears above, of all the judges of the Common Pleas being sued in that court. (Yr. Book, 8 Hen., 619; 2 Roll. Abr., 93.) And see *Ranger* v. *Gt. West. Ry. Co.* (5 H. of L. Cas., 88), where the former decision is recognized and approved. In *Thellusson* v. *Rendlesham* (7 id., 429), the lord chancellor had been counsel in the case, and declined to take part further than to sit; but he and Lord BROUGHAM both recognized the rule, that if the lord chancellor had been the sole judge who could hear the cause, and the parties would

have suffered great delay and expense, and almost a denial of justice if he did not, he might properly hear and decide; thus adopting the argument of necessity above stated. In this State, the same force of necessity has been recognized and yielded to. In *Stuart* v. *Mechanics and Farmers' Bk.* (19 J. R., 495), it appears that KENT, Ch., was a stockholder of the defendant, and, therefore, an interested person, as was held in 3 H. of L. Cases (*supra*). The chancellor, on the opening of the case, suggested that fact. He conferred with Ch. J. SPENCER. The two agreed that he was not strictly a *party* within the provision of the then statute, "that where the chancellor shall be a party to a suit in chancery, the bill shall be filed before the chief justice;" that, therefore, the chancellor had exclusive jurisdiction of the case, and could not rightfully decline cognizance of it. SANFORD, Ch., in *Wash. Ins. Co.* v. *Price* (Hopk. 1), would not yield to that view, and being a stockholder of the complainant corporation, refused to sit; but he placed his action, most decidedly at least, on the ground that he was a party within the statute, and that, therefore, the chief justice had jurisdiction of the case. The doctrine of necessity is also recognized by WALWORTH, Ch., in *Ten Eick* v. *Simpson* (11 Paige, 177–179); and stated in *The Matter of Leefe* (2 Barb. Chy., 39), where there was a clash between the statute, which prohibited any judge from sitting where he is related to a party, and the Constitution, which gave to the chancellor the exclusive jurisdiction of appeals from inferior equity tribunals; and he cites *Mooers* v. *White* (6 J. C. R., 360), where Chancellor KENT heard and decided a case in which his brother-in-law was the complainant; and gives another instance in which the same chancellor heard a litigated cause in which his brother was a party personally interested. See, also, *The People* v. *Edmonds* (15 Barb., 529–531), where S. B. STRONG, J., recognizes and states the doctrine with citations of instances. See, also, opinions in *Peck* v. *Freeholders, etc.* (1 Spencer [N. J.], 457). I think that it must be the law from these cases, that where the judicial power has been confided to one judge, and if he

should fail to act, there would be no means of proceeding in the matter; though interested, he may take such cognizance of the case as is absolutely necessary, so far that the party shall not be without remedy.

It is, however, objected that, though this may be so, where exclusive jurisdiction is conferred by the constitution, it is not so where the power is given by statute general or specific. True, it is said in books of high repute, that "a legislative act, which should undertake to make a judge the arbiter in his own cause, would be void" (Cooley on Const. Lim., \*175); and so has Lord COKE said (Co. Lit., § 212); and so is the utterance in *Day* v. *Savadge* (Hobart, 212–218), [85–\*87 *b*]. How this may be in an action at law or suit in equity, in which the judge was a party named or a party in fact, and where his interest was so close and immediate that there would be a direct pecuniary gain or loss, or direct personal triumph or defeat, to him by the result, we are not now called upon to say. For one I should loathe to hold, that by force of a legislative act, one could bring an action in which his interests were involved, in a court of which he was the sole judge, and could sit alone to hear and decide it. But we know that in cases in which the interest is not direct but remote; is not certain and palpable, but contingent and problematical; is not great and important, but minute; statutes, not specific but general, which have had the effect to confer exclusive jurisdiction, where there was an interest in the result, have been upheld as valid. In Strange, 1173, (*supra*), we are referred to the act of 16 Geo. II, c. 18, which was passed to remedy the difficulty arising from the decision there reported, which act gave power to all and every justice or justices of the peace to act in matters concerning parochial rates, notwithstanding they or he were chargeable therewith. (7 Evans Coll. Stats. p. 476.) I do not find any adjudication upon this act upholding or denying the validity of it. From the fact that it was passed as early as 1744, and the case above cited from Strange, with the reference therein to the act, appears in the third edition of those reports published

in 1792, without note of any judicial disapprobation; and from the further fact that another act of Parliament of like effect was passed (the 30 & 31 of Vict. [c. 115, § 2,]; see Fisher's Digest, vol. iii, p. 5107); I infer that the character, object and effect of the enactment did not meet with judicial reprobation. But we are not left to inferences. There have been adjudications upon statutes conferring exclusive jurisdiction in general terms, wherein it has been held that the force of the enactment over-rode the rule which disqualified by reason of interest. In Massachusetts it has been held that the interest which a justice of the peace has in a penalty payable to his town, though minute, takes away his jurisdiction of the offense. (*Pearce* v. *Atwood, supra.*) Yet the Supreme Court of that State has repeatedly held, that where there is but one tribunal authorized by statute to take cognizance of the offense, such interest does not disqualify. (*Comm.* v. *Ryan, supra; Hill* v. *Wells.* 6 Pick., 104; see remarks of SHAW, Ch. J., in *Comm.* v. *Emery,* 11 Cush., 406; *Comm.* v. *Burding,* 12 id., 506; *Hanscomb* v. *Russell,* 11 Gray, 373.) In this State we have statutes relieving jurors, witnesses and certain officers from the disqualification of being interested in the penalties going into the county treasury or for the benefit of a town. (2 R. S. p. 420, § 58; p,, 551, § 2; 1 id., 357, § 4; see *Wood* v. *Rice,* 6 Hill, 59.) These enactments were not new in principle, but copied from prior statutes, and which had been passed probably to meet cases, in which it had been adjudged that there was a disqualifying interest. (See *Wood* v. *Stoddard,* 2 J. R., 195.) The interest of an assessor of taxes in a town, is very like that which is attributed to Judge METCALFE in the case in hand, save that the official action which may be influenced by it is more direct. An assessor has a voice himself in fixing the valuation of his own land, and that of all other owners in the town. It is a judicial act. (*Swift.* v. *City of Poughkeepsie,* 37 N. Y., 511.) Each assessor must be present at the meeting of the board, if he does his duty, and the assessment is the joint act of all, or at least a majority of the board. (*People ex rel.* v. *Sups. of*

*Chenango Co.*, 11 N. Y., 563.) So members of boards of supervisors and town auditors pass upon their own accounts. No fault has ever been found with this, for the necessity of the case has demanded that it be so. So, merely formal acts, necessary to enable the case to have progress, an interested judge may do. Thus, where a Circuit Judge has been counsel in a cause (which relation is akin to that of having a personal interest in it, and is often made by statute a disqualification), he may execute an order of a higher court directed to the Circuit Judge (*State* v. *Collins*, 5 Wis., 339); and judges of the United States Circuit Court, where both are interested or have been of counsel, may make an order certifying the case to another Circuit. (*Richardson* v. *City of Boston*, 1 Curtis, 250.)

I think, then, that upon the facts of this case, as already stated, we may formulate a rule thus: That where a judicial officer has not so direct an interest in the cause or matter as that the result must necessarily affect him to his personal or pecuniary loss or gain, or where his personal or pecuniary interest is minute, and he has so exclusive jurisdiction of the cause or matter by Constitution or by statute, as that his refusal to act will prevent any proceeding in it, then he may act so far as that there may not be a failure of remedy, or, as it is sometimes expressed, a failure of justice.

We have, so far, spoken of the question of interest only as it existed at common law. It is not different as it exists by statute. Our Revised Statutes (2 R. S., 275) declare that no judge shall sit in a cause in which he is interested. It is obvious that this rule of statute law is as well affected by the necessity existing or created by the conferment of exclusive jurisdiction by another statute, as is the rule of common law. In the case in hand, this exclusive jurisdiction was created by statute. The act of 1869 put upon a county judge the power to appoint commissioners in a proceeding to drain lands in his county, and put it upon him alone. He had no authority to call in another county judge or other officer to act in his place. The judiciary article adopted in 1869–70, and in force when Judge METCALFE made his

order, provided (Const., art. 6, § 15) that the county judge of any county might preside at courts of sessions or hold county *courts* in any other county, except New York and Kings, when requested by the judge of such other county. But it was not until in 1871, and after the making of the order by Judge METCALFE, that jurisdiction was given to county *courts* in drainage proceedings (Laws of 1871, vol. 1, p. 607, § 20); and until then, the county judge of Richmond county could not request the county judge of another county, to act in this matter by holding the Richmond County Court. For the same reason, section 30, subdivision 13 of the Code of Procedure, did not apply. That provides only for the case of an action or proceeding pending in the County Court. As this was before the county judge, he could not, under that subdivision, certify the case to the Supreme Court. When the jurisdiction was, by act of 1871, transferred to the County Court, Judge METCALFE had as much right, by that act and the constitutional provision above cited, to call in Judge MOORE from Kings county as he had by the Code to certify the proceeding to the Supreme Court. So that when the order appointing the commissioners was made there did exist the necessity which we have spoken of, and which saved the order made from being void or voidable, by reason of any disqualifying interest existing in Henry B. Metcalfe, the county judge of Richmond county. If, then, we assume that there was a disqualifying interest, as to which courts differ (*Foot* v. *Stiles*, 57 N. Y., 399; *Lexington* v. *Long*, 31 Mo., 369; *Peck* v. *Freeholders*, 1 Spencer, 457; *Gregory* v. *C. C. & C. R. R. Co.*, 4 Ohio St., 675); and that the act of making the order was a judicial one (*In re Sweet* v. *Hulburt*, 51 Barb., 312; *People* v. *Wheeler*, 21 N. Y., 86, per DENIO, J.); and that the objection has not been waived by the appellants (*Oakley* v. *Aspinwall*, 3 Comst., 547; *Baldwin* v. *Calkins*, 10 Wend., 167; *Gilbert* v. *Col. Turnp. Co.*, 3 Johns. Cases, 107 and 541); still the views we have expressed above, lead us to the conclusion that the preliminary order of Judge METCALFE is not vitiated thereby.

There are some minor points made by the appellants.     We cannot notice them *seriatim.* · They have all been examined and considered.     Either it does not appear from the record that the facts exist, which are needed to sustain them, or they are not well taken as legal propositions at this time.

The order appealed from should be affirmed.

All concur, except CHURCH, Ch. J., dissenting.

Order affirmed.