Hatch, J. (dissenting).
—The lands proposed to be taken consist of the fee of a certain open space in the city of Buffalo called *420 The Terrace. It has ior more than ten years last past been used as a public street, the fee to the same residing in the owners of abutting property, of which Pratt, the appellant is one. The: proceedings instituted by the city of Buffalo were duly taken under and in pursuance of its charter, are in all respects regular, and conferred jurisdiction upon the court to entertain the same.
Upon application for the appointment of the commissioners, Pratt appeared and made preliminary objection, based upon irregularity in the papers, and that the law under which the proceedings were instituted had been repealed. These objections being overruled, he then sought to raise an issue of fact for the determination of the court, and to that end tendered an answer alleging, among other things, that certain persons appointed commissioners, under and by virtue of an act of the legislature, providing for the relief of said city, and to change and regulate the crossing and occupation of streets, etc., in said city by railroads,, were authorized to enter into a contract, on behalf of the city, with any railroad or other company using the streets, for relief from their present obstruction by such use, in pursuance of a certain plan theretofore recommended by a commission of engineers, and then on file in the office of the city engineer. That, said commissioners, claiming to act for the city, entered into a contract with the Hew York Central & Hudson. River Railroad Company, ostensibly in pursuance of the powers conferred by said act, but that, in fact, such contract was not for the relief of said city, was not in pursuance of the said plan, and not within, the authority conferred by said act, and is void; that said contract provides for a deep cut through the Terrace, and the laying of railroad tracks therein; that this proceeding is not. taken in good faith, nor for the purpose of acquiring the fee of said premises for public streets, but solely for the purpose of enabling compliance with the said illegal and unauthorized contract made by said commissioners. The tender of the answer was refused, proof of the facts thereof denied, and the commissioners were appointed.
This ruling proceeded upon the theory that the legislature having delegated to the city power to acquire the fee of such streets, the proceedings being regular and the facts essential to a proper case for the exercise of the power appearing therein, it was conclusive upon the court and that the owner could not be heard to contradict or overthrow it. This presents the only question argued upon this appeal. The city is authorized by its charter to take in-fee for public streets, alleys and squares, the lands situate within the boundaries of such places, which have been or shall have been used as public streets, alleys or squares for more than ten years. Charter, title 8, § 22.
The proceedings to acquire title are the same as in other proceedings authorizing the exercise of the power of eminent domain by said city, except that the only notice required is that of publication. íd., § 23.
When the necessary steps have been taken, the city is required to make application to the court for the appointment of commis *421 sioners. . “ Such court shall hear such application, and may appoint three commissioners to ascertain the just compensation to he made for such lands.” Id., § 5.
By § 22, it is seen that the city is only authorized to take the fee for a specified purpose, i. e., for public streets, etc. Any attempt, therefore, to take the fee for any other purpose must fail for want of authority to support it. No difference of opinion can arise as to this. But the question is, who determines this fact ? Is the legislative declaration conclusive, or is such declaration the subject of review by the court ? If the declaration of the body authorized to institute the proceedings should show a purpose outside the authority granted, then it would, doubtless, not be questioned, but that it would be the duty of the court to refuse to appoint commissioners.
If, in fact, the body vested with the power to institute the proceedings should do so maliciously and corruptly for the purpose of inflicting injury, or for the purpose of taking property ostensibly for one purpose, lawful and authorized, but really for the purpose of vesting it in another or the right of its use in another, could not such fact be shown to defeat it, although the proceedings were upon their face regular ? If not, then the provision of the charter that the court shall hear the application, and may appoint the commissioners, is limited to a scrutiny of the papers to determine whether they are regular upon their face and prima fade show a proper case, but the owner is without right to contest the application, and the court is without power to aid him. That this construction of the respective powers can he used to the great detriment and injury of owners of the fee of a street, with the right of easement in the public, is clearly shown by the opinion of Beckwith, Ch. J., In the Matter of Taking the Fee of the Terrace. (Mss. opinion not yet reported.) where it is clearly and ably demonstrated that the owner of the fee burdened with an easement is entitled to compensation for additional burdens placed thereon to his damage and injury, while with the fee taken this burden may be granted by the city for such use and the owner left without remedy. I do not think such is the construction; on the contrary, the construction to be given this section is like that involved in Matter of City of Buffalo, 17 N. Y. State Rep., 373, where the language was “ the court shall confirm the report,” and the court held that the judicial function of examination and determination was not excluded, but it was to be exercised; so here the language that the court “ shall hear such application ” carries with it all necessary powers for the exercise of the judicial functions, not alone upon the case presented by the applicant, but also upon the case presented by the owner, and determine, first, whether the proceedings are in compliance with the statute, and second, whether the property to be taken is taken, in fact, for an authorized public purpose, and if such latter fact be contested, then the court shall hear proof on such issue and determine such application. It is conceded that this conclusion is sustained by authority.
In Matter of Niagara F., etc., Co., 108 N. Y., 383; 13 N. Y. State *422 Rep. 690, it is said by Judge Andrews: “ The general principle is now well settled, that when the uses are in fact public, the necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used and the extent to which such right shall be delegated, are questions appertaining to the political and legislative branches of the government, while,on the other hand, the question whether the uses are in fact public, so as to justify the taking in invitum of private property, therefore, is a judicial question to be determined by the courts.” , In this case the court looked beyond the purpose of the articles of association, which showed upon their face compliance with the law, authorizing a charter, and the exercise of the power of eminent domain, and determined, as a fact, that the enterprise was not a public one, although the legislature had so declared it.
Judge Rapallo, in speaking of the cases sanctioning the right of the legislature to take the property of an individual without his consent says: “ Nor do they dispute the power and duty of the courts to determine whether the use is public or private, for the purpose of ascertaining whether or not the action of the legislature is valid. In the Matter of Townsend, 39 N. Y., 174, it is conceded that even an express declaration by the legislature, that the use was public, would not be controlling. Matter of Deansville Cemetery Ass., 66 N. Y., 572.
The conclusion was reached, in that case, that if the purpose for which the property was taken, was, in fact, for a public use, then it rested with the legislature, either of itself or to delegated bodies, to exercise the power; but whether the use was public or private, was to be' determined solely by judicial inquiry.
In Matter of Ryers, 72 N. Y., 1, Judge Folger said : “ It is still for the judiciary to see to it * * * that the purpose to be reached is public. And with all that has been said in oral argument and presented upon the printed points, no facts appear upon the record, nor does there appear to have been any attempt to show them, to the end that the purpose of the work contemplated in this case is not public.” This language seems to imply that the right exists to attack proceedings, taken in pursuance of a statute authorizing the exercise of the power of eminent domain, where the proceedings upon their face are regular, and declared to be for a public purpose. This could only be done in that case by proof aliunde the record, but facts, tending to establish that, in fact, the purpose for which the proceeding was instituted, was not a public one, would be competent for the court to take judicial cognizance of in determining such question. If it was proper in that case I see no reason why it is not equally so in every other, where the power is sought to be exercised.
In Matter of Application of Jacobs, 98 N. Y., 111, Judge Earl said : “ The legislature may condemn or authorize the condemnation of private property for public use, and it may, in the exercise of its discretion, determine when and upon what property the power of eminent domain may be exercised ; but its exercise is not beyond the reach of judicial inquiry. Whether or not a use *423 is a public one, which will justify the exercise of the power, is a judicial question.”
These authorities seem to firmly settle that the power cannot be exercised except for the specified purpose, and that whether it is for the specified purpose or not, does not rest upon the declaration of the legislature or its authorized body alone, but in each case it rests upon what the fact is; and if, in fact, the proceeding is not for a public purpose, then it is the duty of the court to so declare it, and refuse its sanction. Here the answer tendered, and the proof offered under it, which we must assume would have been made, tends to show, as a fact, that the fee of this street is wanted, not for a street or for street purposes, but to aid in carrying out an illegal agreement, void under the act authorizing it, and for the purpose of enabling a railroad to make a deep cut through this street.
This, if true, shows the property is not intended for the public use claimed, to wit: a street, but for unlawful and private uses. It may be entirely true that the end sought by the city is to make the streets, and the one of which the fee is sought to be taken, more available for street purposes, but upon these subjects and issues thus raised the owner is entitled to be heard and have the judgment of the court based thereon. His claim is, that under the guise of the right of eminent domain, his property is being taken for a purpose not authorized by the delegated power, but for one entirely different. If this be so, then he is entitled to the judgment of the court establishing it. The law does not tolerate the disposition of property by indirection where it cannot be directly done. Thus, under the guise of the taxing power a person may not be despoiled of his property. Weismer v. Village of Douglas, 64 N. Y., 91. And under the claim of police regulations, the liberty and property of the citizen may not be arbitrarily invaded or taken away. Matter of Jacobs, 98 N. Y., 98. So here the declaration of the fact by the council is not conclusive, but may and should be inquired into upon the issues presented. It is farther urged that the charter does not contemplate or provide for the serving of an answer, but it does provide for a hearing, and upon the presentation of any matter in answer to the claim of the city, which properly raises an issue, the court can take proof pertinent to the issue thus raised. Under the drainage act, no provision is made for any particular form of practice, yet, Matter of Ryers, supra, contemplates that proof would be proper upon the issue of whether the improvement was for a public purpose or not. The same is true with respect to proceedings under the general railroad act upon the coming in of the petition, when cause may be shown against it, but upon what papers or proof the statute is silent, yet no difficulty is experienced in disposing of the issues raised. So, here the proceedings upon the one side and the answer upon the other presents an issue sharply defined, and it is this issue upon which the court is to take proof and determine whether a proper case is presented for the appointment of commissioners.
The conclusion is, therefore, reached that the owner was entitled *424 to be heard upon the questions raised, and that it was error to reject the answer and proof. The order appointing the commissioners should be vacated and set aside, and a hearing ordered upon the issues raised.
Order affirmed.
Titus, J., not sitting.