In the Matter of the Drainage of Certain Swamp Lands in the Town of Penfield, Monroe County.

ADELE L. HULBURT, Appellant, DURFEE W. SMITH and A. B. TITUS, Commissioners, and Others, Respondents.

*Drainage commissioners — entertainment of, by one of the petitioners — subpœnaing witnesses — attorney for the petitioners acting as attorney for the commissioners.*

The fact that in drainage proceedings, meals of the commissioners, at a hotel, were paid for by one of the petitioners, during a session held for the hearing of testimony submitted by the petitioners by whom the proceedings were instituted and before the commissioners had made their adjudication as to the necessity for the drain, is not of itself a sufficient cause for setting aside a report subsequently made by the commissioners that the drain is necessary, and that it must be made through lands of other parties than the petitioners.

It is not misconduct on the part of drainage commissioners to themselves subpœna witnesses to appear and testify before them.

It is not a ground for setting aside the report of drainage commissioners that the attorney for the petitioners by whom the proceedings were instituted acted as attorney for the commissioners in reference to the necessary legal steps that they were required by the statute to take, such as the giving of notices, etc., when it is shown that the attorney was not consulted by and did not advise or have any conversation with the commissioners in reference to any question of fact that was to be decided by them.

APPEAL, by Adele L. Hulburt, from an order of the Monroe County Court, entered in the office of the clerk of that county on the 10th day of December, 1892, denying a motion to set aside the majority report of commissioners in drainage proceedings, and to remove them upon the grounds of misconduct, bias and improper relations with the petitioners' attorneys.

*William G. Jerome*, for the appellant.

*Walter S. Hubbell*, for the respondents.

HAIGHT, J.:

On the 13th day of July, 1891, a petition was presented to the County Court of Monroe county asking for the drainage of certain swamp, bog, low or wet lands situated in the town of Penfield, in that county. Upon such petition the court made an order

appointing three commissioners to hear and determine, *first*, whether it is necessary in order to drain such lands that a ditch or ditches or other channel for the free passage of water should be opened through lands belonging to others than the petitioners; *second*, whether it is necessary for the public health that such lands should be drained; and, *third*, to take such other and further steps with reference thereto as are provided by the general drainage law of the State. Thereupon the commissioners so appointed entered upon the discharge of their duties, and after viewing the premises and hearing the parties interested, made their report in which they found that it was necessary in order to drain the lands that a ditch should be opened through the lands belonging to others than the petitioners, and that it was necessary for the public health that such lands should be drained. One of the commissioners dissented from so much of the report as found that the drainage was necessary for the public health. The motion is to set aside the majority report and to remove the commissioners who signed it.

It must be conceded that if the charges made in the moving affi-davits are true the commissioners were guilty of such misconduct as would require their removal and the setting aside of their report. (*In the Matter of N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 60; *In the Matter of Underhill*, 32 Hun, 449; *In the Matter of B., N. Y. & P. R. Co.*, Id. 289; *In the Matter of N. Y., W. S. & B. R. Co.*, 36 id. 630; *Clark* v. *Eldred*, 54 id. 5.)

But nearly all of the matters upon which the charges are based are denied in the opposing affidavits, and inasmuch as the County Court has refused to set aside the report we must assume that the judge believed the matters stated in the opposing affidavits rather than those stated in the moving papers. In view of the fact that he is a resident of the county and has an opportunity to know some-thing of the character of the persons verifying the papers, we do not think that we should interfere with the judgment exercised by him in this regard.

There are, however, three questions which require special atten-tion. It appears that during the session of the commissioners, in taking testimony submitted, by the parties interested, in the village of Penfield, the commissioners dined at a hotel in that village, and that their meals were paid for by one of the persons who signed

the petition upon which the proceedings were instituted.  Lewis on Eminent Domain, at section 421, says : " The mere fact that the commissioners were served with refreshments by one of the parties, or dined or lodged at his house, will not of itself be sufficient cause for setting aside of report.  While such bodies should not receive entertainment from interested parties, yet if there is no improper motive and no abuse of the privilege it will be disregarded."  In *Johnson* v. *Loveless* (18 N. Y. Wkly. Dig. 49), it was held that the dining of jurymen by a party was not necessarily ground for reversal, where it appeared that the trial was before a justice of the peace at a place where there was no public house in the vicinity and the jurors had to get their meals at private houses, and where the evidence showed that nothing was said to them or in their hearing, and nothing was done in their presence calculated to influence their decision.  But there is another ground upon which we think that the conduct of the commissioners may be justified. The statute under which they were proceeding provides that they shall be paid for their services five dollars for each full day actually employed in their duties ; that they shall keep an account of all their expenses and of all the costs and expenses incurred in draining the lands, including all the costs and expenses incurred in any proceedings under the act and preliminary or incident thereto, all of which shall be a lien upon the property benefited.  (Laws of 1886, chap. 636, § 8.)

It will thus be observed that their services and expenses are to be paid out of the land benefited by the drain ; but this can be done only in case they determine that the drain is necessary for the public health.  In case they should determine that drainage was not necessary for the public health then they would have no jurisdiction to proceed with the drain or to charge the expenses upon any of the lands.  (*In the Matter of Ryers*, 72 N. Y. 1.)

It consequently follows that the persons instituting the proceedings become liable for all of the costs and expenses of the commissioners down to the time that the adjudication is made that the drainage is necessary for the public health.  In case it is so adjudged then the costs and expenses may be refunded out of the assessments made upon the lands benefited.  In case it is not so adjudged the costs and expenses must be borne by the petitioners.

The meals paid for by one of the petitioners was, as we have seen, during the hearing before the commissioners of the parties interested in the proceedings, and before they had made their adjudication as to the necessity of the drain, etc. The commissioners gained nothing by the transaction. Had their meals not been paid for they could have charged the amount up in their expense account, and made the same a lien upon the land. The payment on the part of the petitioner was but an advancement by him of a part of the expenses of the commissioners, which he was liable for in case it should be adjudged that the drainage was unnecessary, and which he was entitled to have refunded to him in case it should be adjudged it was necessary.

It appears that one of the commissioners subpœnaed one Michael Jumph to appear before their commission and give his evidence, and paid him his witness fees therefor, and at the same time said that he was going to see other men with relation to their being sworn in the proceedings. Jumph testified that nothing was said to him as to the subject upon which his evidence was called for, or of the side on which his testimony was wanted. It would doubtless have been in better taste had the commissioners intrusted the subpœnaing of witnesses to some other person, but we do not understand that it was misconduct on their part to do it themselves. They were commissioned to make a personal view of the lands, and to make inquiry as to the necessity of their being drained. They unquestionably had the power to compel the attendance of witnesses before them for the purpose of ascertaining the necessary facts upon which to base their determination. Their duties in this respect are quite different from those of a court or referee trying an issue of fact between parties where only the witnesses are sworn that are produced by the respective parties. The commissioners are charged with the duty of investigating the facts for themselves, and determining the questions submitted to them.

A charge of misconduct is made upon the ground that the attorneys for the petitioners also served the commissioners as their attorneys. In the minutes of the proceedings kept by the stenographer, it appears that the attorneys for the petitioners appeared as attorneys for the commissioners; and in the summing up of the evidence before the commissioners, it is stated that the attorneys summed up

for the commissioners. The opposing affidavits, however, show that this entry was an inadvertence, that the attorneys only appeared for the commissioners as to the necessary legal steps that they were required by the statute to take, such as the giving of notices, etc., and that they in no case were consulted, or advised, or had any conversation with the commissioners in reference to any question of fact that was to be decided by them. Under the explanation given by the attorneys, we discover nothing that amounts to misconduct, prejudice or bias. The order appealed from should be affirmed, with ten dollars costs and disbursements.

DWIGHT, P. J., LEWIS and MACOMBER, JJ., concurred.

Order of Monroe County Court appealed from affirmed, with ten dollars costs and disbursements.