DANIEL E. BEADLE and Others, on Behalf of Themselves and All Other Taxpayers of the Town of Clarendon, Orleans County, New York, Similarly Situated, Plaintiffs, *v.* COUNTY OF ORLEANS and Others, Defendants.

Supreme Court, Orleans County, June 30, 1933.

*Byard J. Stedman*, for the plaintiffs.

*Frederick M. Thompson*, for all defendants except Bushwick Savings Bank of Brooklyn.

*Bertram S. Harcourt*, also of counsel.

*Sanford E. Church*, for Bushwick Savings Bank of Brooklyn.

CHARLES B. WHEELER, Official Referee. This is a taxpayers' action brought to restrain the collection of certain taxes levied in 1930 on all the taxable property of the town of Clarendon by the board of supervisors of Orleans county on the alleged ground said taxes are illegal.

The Bushwick Savings Bank is made party defendant because it holds certain bonds of the town of Clarendon issued to pay the cost of certain drainage improvements, to the payment of which with interest the taxes complained of were levied. The plaintiffs seek to have said bonds declared illegal and void, and the payment of any further sum of money either for principal or interest restrained.

The bonds and levy complained of grew out of a proceeding instituted in 1919 under the State Drainage Law to drain certain swamp land situate in the town of Clarendon.

Briefly, that law provided that upon the presentation of a petition by the owners of swamp land the court should appoint three drainage commissioners, who upon due notice and after hearings had, were to determine whether the public health required the drainage of the lands, and if they so determined, to cause maps of the territory to be made and filed, and to estimate the expense of doing the work and to compel the supervisor of the town in which such drainage district was situated to borrow such estimated sum of money on the credit of the town and turn it over to the drainage commissioners to be used in performing the work.

After the work had been completed said drainage commissioners were to ascertain and determine the entire cost of the project and determine whether such total cost was to be paid in one lump sum or in annual installments, and to assess the proper proportion of such total cost against the several parcels of lands embraced in such drainage district; the owners of which parcels being required to pay the respective amounts *assessed* against their premises.

The Legislature, realizing that if the drainage commissioners decided to make these assessments payable in annual installments, there would be no money available to repay principal and interest of the preliminary town bonds issued to prosecute the work and

additional expenses incurred therein, further provided that said drainage commissioners might again compel the town supervisor to issue a second set of town bonds corresponding in the aggregate amount to the total cost of said drainage project and payable, with such rate of interest as the drainage commissioners might determine, in the same number of annual installments as the number of annual assessments they had determined on; and further provided that such annual assessments made against each parcel of land situate in the drainage district together with annual interest on said town bonds, were to be collected of the owners of said parcels, in the same manner as other town taxes are collected.

The scheme, up to this point, is based on the supposition or expectation that the annual payment by the property owners of the amount assessed against each parcel, plus the proportionate part of the annual interest on the said town bonds, would provide a sufficient fund to annually pay the installment due that year on the said town bonds.

But the Legislature also realizing that possibly some of the owners of the parcels of lands upon which such annual assessments had been made would not be able to pay the same, further provided that " if in any year the amount collected from assessments is not sufficient to pay the principal and interest of the town bonds, falling due in that year, there shall be levied in the next annual tax levy against all the taxable property in said town in the same manner as other town taxes are levied and collected, an amount equivalent to said deficit in the amount collected from said assessments."

The drainage proceeding, hereinabove mentioned, known, and hereinafter referred to, as the Springle Drainage Proceeding, substantially followed the above-mentioned procedure up to the issue and sale of the second set of bonds amounting to $63,600, which were purchased by H. L. Allen & Co., of New York city, and soon after sold to the defendant Bushwick Savings Bank.

Unfortunately, the Springle Drainage Project having been instituted just after the close of the World War, when everything was high-priced, cost a large amount of money and the first assessment being payable in 1929, after the stock market collapse, and subsequent assessments falling due during the height of the present depression, the property owners in the Springle Drainage District, almost to a man, decided that their properties, even after they had been drained, were not worth the cost assessed against them, and refused to pay their assessments.

The result was that the town of Clarendon found itself incumbered with an indebtedness of $63,600, plus interest, payable in five equal annual installments, and the drainage district, for whose

benefit the bonds had been issued, threatened to default in the payment of their assessments.

Under these circumstances, the town board of the town of Clarendon, realizing that the supervisor had been mandamused to issue these bonds aggregating $63,600, payable in five equal annual installments with six per cent interest per annum, the first installment falling due in December, 1929, and further realizing that unless some provision was made to help the town, the town would be obliged to default in the payment of the installment of bonds falling due December 1, 1929, and that under section 36 of the Drainage Law no money could be raised to pay these bonds until the following year, 1930, said town board determined to appeal to the Legislature of the State of New York for relief and had prepared a bill which was passed by the Legislature and signed by the Governor which is known as chapter 249 of the Laws of 1929.

An examination of this act will show that in *no respect whatever does it change, vary or alter the provisions of the concededly constitutional Drainage Law in regard to the* imposition or collection of the unpaid drainage assessments as a part of the general town taxes.

Section 36 of the Drainage Law (in the above quoted paragraph) provides that " if in any year the amount collected from said assessments is not sufficient to pay  *  *  *  there shall be levied in the next annual tax levy against all the taxable property in said town  *  *  *  an amount equivalent to said deficit."*

Section 2 of chapter 249 of the Laws of 1929 provides for exactly the same thing in almost the same language, to wit: " If said taxes are not paid to said town collector  *  *  *  it shall be his duty to return same to the county treasurer of the county of Orleans as unpaid taxes  *  *  *.  The county treasurer shall thereafter proceed to advertise and sell the several parcels of lands  *  *  * and the county treasurer *at the next annual meeting of the board* of supervisors of Orleans county shall present a statement of the taxes so returned to him by such collector and the *aggregate amount*  *  *  *  *which remain unpaid, and the board of supervisors shall* thereupon levy and assess the aggregate amount of such returned taxes so certified to it by said county treasurer against *all* the taxable property of the town, to be levied, assessed and collected, as other town charges and expenses are levied, assessed and collected."

It is true that chapter 249 of the Laws of 1929 contains certain

---

* Drainage Law repealed by Laws of 1921, chap. 497.

provisions authorizing the county treasurer to loan the credit of the county temporarily to the town by advancing the amount of the *unpaid assessments* to the supervisor so that he will be able to pay the installments of the drainage bonds falling due prior to the tax collection period; but the *obligation* of the general taxpayer is not increased one whit by this provision over the provision contained in section 36 of the Drainage Law* (above quoted) as it makes no difference to the general taxpayer whether a tax is levied to *repay money* or to *provide money*, if, as in this case, the *amount* would be the same in either case.

The proceedings for the drainage of the swamp lands in question were originally instituted by petition to the Supreme Court which by order appointed commissioners to inquire whether it was necessary for the public health that such lands should be drained and whether it was necessary such lands be drained to render such lands tillable.

The commissioners so appointed proceeded with the discharge of their duties as prescribed by the Drainage Law, and after hearing evidence reported the drainage of said lands necessary for the public health. Their report was confirmed by order of the Supreme Court and subsequent proceedings were had by the commissioners.

The Drainage Law provided that where the lands to be drained lay in different counties, the petition might be made to the Supreme Court, but where such lands lay in one county only, then the proceedings were to be instituted by petition to the County Court.

The lands sought to be drained in the proceeding in question all lay within the town of Clarendon in the county of Orleans. Therefore, a mistake was made in instituting the proceedings in the Supreme Court. The plaintiffs contend this error renders all the proceedings had void, and the prayer of their complaint should be granted.

However, the error was discovered, and by an order of the Supreme Court made on the 5th day of October, 1931, the proceedings were transferred to the County Court of Orleans county, and from that date all subsequent proceedings, which were many, were had in that court.

The order of transfer was made under the provisions of section 110 of the Civil Practice Act.

Section 110 of the Civil Practice Act is very broad in its provisions giving power to the Supreme Court to remove actions and proceedings instituted in the wrong court to the proper court.

The section is silent as to when steps to remove are to be taken. In the broadest terms, however, the section declares: " No action

---

* Drainage Law repealed by Laws of 1921, chap. 497.

or special proceeding shall fail or be dismissed on the ground of a mistake in the court in which the action or proceeding is brought."

And when an order of removal has been made, " the subsequent proceedings must be the same as if the action or proceeding had been initiated in the court to which the removal is made."

It may perhaps be argued with force that the section applied to actions and proceedings where no final judgment or order had been made.

In the present case, however, no final order had been entered. The drainage proceeding remained unfinished. Very many things remained to be done by the commissioners before there was any final termination of their duties, such as the making of maps, the determination of the lands benefited, the extent of such benefits and their assessment on the lands so benefited, the issue of bonds to meet the expense and the doing of various other things required to be done by the provisions of the Drainage Law.

The referee is of the opinion that the proceeding had not progressed so far that it was beyond the power of the Supreme Court to remove the proceeding to the County Court. To hold otherwise would be to defeat the very purpose and language of section 110.

It should also be noted that during the entire history of the drainage proceeding no objection appears to have been raised as to the power of the court or the regularity of the order transferring the proceeding to the County Court.

The plaintiffs further contend that the proceeding resulting in an assessment of their property for the drainage of the lands in question violates their constitutional rights.

It is to be noted in the outset that the drainage commissioners appointed determined and reported after a hearing that the draining of the swamp lands in question was necessary and proper for the promotion of the public health. The court must accept this determination and cannot now inquire in this action as to the correctness of such determination. It, however, lifts the proceeding from a private venture to a proceeding for the public benefit.

The constitutionality of such a public proceeding under the Drainage Law of the State has been sustained by the courts in well-considered cases. (*Matter of Ryers*, 72 N. Y. 1; *Matter of Tuthill*, 163 id. 133, 141; *Horton* v. *Andrus*, 191 id. 231; *People ex rel. Mount Vernon Trust Co.* v. *Millard*, 133 App. Div. 139; *Millard* v. *Adams*, 136 id. 669.)

By section 36 of the Drainage Law it is provided that for the purpose of raising the necessary money to pay the expenses of such drainage such amount shall be certified to the supervisor

of the town in which the lands to be assessed are located, and that the supervisor shall immediately issue bonds of the town, and that the assessments on the property benefited shall be collected annually from the property assessed and the proceeds thereof be used to pay said bonds.

In other words, the town is called on to finance the project and reimburse itself by the collection of assessments for such improvement on the property benefited.

We find such statutory provisions upheld as proper and constitutional by the courts. (*People ex rel. Mount Vernon Trust Co.* v. *Millard*, 133 App. Div. 139; *Millard* v. *Adams*, 136 id. 669; *Town of Amherst* v. *County of Erie*, 260 N. Y. 361; *Horton* v. *Andrus*, 191 id. 236.)

These cases uphold the validity of the town bonds so issued.

The Legislature of the State by chapter 249 of the Laws of 1929 passed an act touching the levying and collection of taxes to pay assessments made in drainage proceedings by towns in the county of Orleans. The proceedings in that act were followed and we are unable to discover anything unconstitutional in that act, and reach the conclusion that the plaintiffs' complaint should be dismissed, with costs.

So ordered.